Argued 23 February, decided 17 April, rehearing denied 3 July, 1905.

**NEPPACH *v.* OREGON & CAL. RAILROAD CO.**

80 Pac. 482.

APPEAL—CONCLUSIVENESS OF VERDICT AS TO FACTS.

1. On appeal the supreme court cannot review questions of fact, but must accept the verdict as conclusive if it is supported by any competent evidence.

EVIDENCE AS TO DISPUTED FACTS.

2. The evidence in this case supports the verdict.

AUTHORITY OF AGENT—QUESTIONS OF LAW AND FACT.

3. The appointment or authority of an agent is a question of fact, but what he may do by virtue thereof is a question of law. When the appointment and authority are admitted the court may declare whether they empower the agent to perform the particular act in question, but when there is a dispute as to the appointment or authority conferred, the fact of such appointment or authority must be found by the trier of fact.

EVIDENCE AS TO SCOPE OF AGENCY.

4. One who is held out by a railroad company as its authorized land agent, and who transacts its entire business in relation to the acquisition, sale and disposition of lands, may bind the company by a contract extending the time for payment by a purchaser of lands, or waiving a strict compliance with the provisions of the contract in that regard.

VENDOR AND PURCHASER—ORAL MODIFICATION OF WRITTEN CONTRACT*—STATUTE OF FRAUDS—ESTOPPEL.

5. A party to a written contract for the sale of land, who knowingly gives an oral consent to a postponement of the performance of some material provision that is of benefit to the one consenting, will not be permitted to insist, after the other party has acted on the consent, that such consent is void because not written, and enforce the contract as originally made, even though time and the prompt performance of the deferred condition were made essential: *Whiteaker* v. *Vanschoiack,* 5 Or. 113, and *Sayre* v. *Mohney,* 35 Or. 141, distinguished. The statute of frauds was not intended to aid in the perpetration of injustice or dishonesty.

DAMAGES FOR FAILURE TO CONVEY LAND—ELEMENTS OF VALUE.

6. While the value of real estate cannot be shown by proving the value of the several constituent elements of value and then adding those together, yet a witness who has given his opinion as to the market value of the land may state the facts upon which his opinion is based, although they involve the character and value of a constituent element of the realty, such as timber.

MEASURE OF DAMAGES FOR FAILURE OF VENDOR TO CONVEY.†

7. The vendee's damage for the vendor's refusal to convey is the value of the land agreed to be conveyed at the time of such refusal, less the unpaid purchase price.

From Multnomah: ARTHUR L. FRAZER, Judge.

Statement by MR. JUSTICE BEAN.

*See note in 56 Am. St. Rep. at p. 671.

†NOTE.—See 4 L. R. A. 670 for collection of authorities on measure of damages on breach of contract to convey.

. REPORTER.

This is an action by Anthony Neppach against the Oregon & California Railroad Co. On March 24, 1883, the defendant contracted to sell to the plaintiff and one C. A. Himpel (the contract being in the name of Himpel) five sections of land in the eastern part of Multnomah County and within the indemnity limits of the grant made to it by act of congress of July 25, 1866. The contract price was $12,866.36, of which $1,286.69 was paid in cash, and the balance, with interest, was to be paid in ten annual installments, the last becoming due March 24, 1893. The times of payments were made of the essence of the contract, and it was stipulated and agreed that, in case of default, the contract, so far as it might bind the defendant, should become absolutely null and void. The land was included also within the limits of a prior grant of congress to the Northern Pacific Railroad Co., and soon after the making of the contract a controversy arose as to whether it belonged to that company or the defendant. It is claimed and alleged that, owing to this controversy, and to the uncertainty of the defendant's title, a parol agreement was made and entered into between plaintiff and Himpel and Schulze, the land agent of the defendant, a short time before the second payment became due, that the time for making the deferred payments should be postponed until the settlement of such controversy, and, in case it should be decided in favor of defendant, plaintiff and Himpel should make the deferred payments and receive title to the land, but, in case it should be decided against defendant, they should make no claim for damages, but should be entitled to a return of the money already paid; that on March 24, 1884, when the second payment became due, it was tendered to defendant, but was declined, and plaintiff and Himpel were informed that no more payments would be accepted or received until the overlap controversy was settled; and that, relying upon such statement and the extension agreement referred to, they made no tender or offer to perform prior to the settlement of such controversy, except in March, 1885, when they inquired of defendant's agent if the controversy had been determined, and if defendant was ready to accept further payments, offering to make the same, but were informed that defendant was not yet ready to comply with its contract, and would not receive any

payments until the overlap controversy was determined. This controversy was pending in various forms in the United States land offices and the courts until January, 1900, when it was finally settled in favor of the defendant by the Supreme Court of the United States: *United States* v. *Oregon & Cal. R. Co.*, 176 U. S. 28 (20 Sup. Ct. 261, 44 L. Ed. 358). The plaintiff, to whom the contract for the sale of the land had in the mean time been assigned, thereupon tendered defendant the balance due, and demanded a conveyance, but it refused to accept the money or to comply with the contract on the ground that all rights of the plaintiff had been forfeited for failure to make the payments as stipulated. This action was afterwards commenced to recover damages for a breach of the contract. Plaintiff had judgment for $47,000, and the defendant appeals.

Affirmed.

For appellant there was an oral argument by *Mr. William David Fenton* and *Mr. William Coleman Bristol*, with a brief by *Mr. Fenton* to this effect.

I. Plaintiff relies upon a parol agreement modifying the original contract of March 24, 1883, claimed by him to have been made on behalf of the defendant by and through Paul Schulze, and to have been so made by Schulze with Himpel and plaintiff. The only basis for such a claim is an alleged conversation between Schulze, Himpel and plaintiff which took place in July or August, 1883, some four months after the contract was made and long prior to March 24, 1884, the date when the second payment matured. The evidence does not show a valid or any agreement. The conversation detailed, if true, does not amount to a contract, and was not intended by any of the parties as a contract, and was wholly without consideration: Clark, Contracts, p. 172; *Lipsmeier* v. *Vehslage*, 29 Fed. 175; *Holmes* v. *Boyd*, 90 Ind. 332; *Stuber* v. *Schack*, 83 Ill. 191; *Hoffman* v. *Coombs*, 9 Gill, 284; *Ives* v. *Bosley*, 35 Md. 262 (6 Am. Rep. 411); *Turnbull* v. *Brock*, 31 Ohio St. 649; *Holliday* v. *Poole*, 77 Ga. 159; *Liening* v. *Gould*, 13 Cal. 598; *Barron* v. *Vandvert*, 13 Ala. 232.

II. A new agreement altering the terms of a prior written contract within the statute of frauds, or discharging or waiving it in part only, is also within the statute, and in order to be binding must be in writing, and this rule, according to the great weight of authority, applies to an extension of time in which a contract required to be in writing is to be performed, excepting where the modified agreement has been fully performed. If the conversations detailed by Neppach and Himpel show a contract, such contract embraced in its terms other material elements than the mere extension of time: *Carpenter* v. *Galloway,* 73 Ind. 418, 423; *Bradley* v. *Harter,* 156 Ind. 499 (60 N. E. 139); *Walter* v. *Victor Bloede Co.* 94 Md. 80 (50 Atl. 433); *Abell* v. *Munson,* 18 Mich. 306 (100 Am. Dec. 165); *Cook* v. *Bell,* 18 Mich. 387; *Weaver* v. *Aitcheson,* 65 Mich. 285-287 (32 N. W. 436) *Long* v. *Hartwell,* 34 N. J. Law, 116; *Espy* v. *Anderson,* 14 Pa. 308; *Ladd* v. *King,* 1 R. I. 224 (51 Am. Dec. 624); *Hicks* v. *Aylsworth,* 13 R. I. 562; *Dana* v. *Hancock,* 30 Vt. 616; *Hetch* v. *Woolridge,* 6 Randolph (Va.), 605 (18 Am. Dec. 751); *Rucker* v. *Harrington,* 52 Mo. App. 481; *Newman* v. *Bank,* 70 Mo. App. 135; *Warren* v. *A. B. Mayer Mfg. Co.,* 161 Mo. 112 (61 S. W. 644); *Schultz* v. *Bradley,* 57 N. Y. 646; *Hill* v. *Blake,* 97 N. Y. 216; *Thomson* v. *Poor,* 10 N. Y. Supp. 597, 598, 22 N. Y. Supp. 570; *Lee* v. *Hawks,* 68 Miss. 669 (13 L. R. A. 633, 9 So. 828); *Brown* v. *Sanborn,* 21 Minn. 402; *Heisley* v. *Swanstrom,* 40 Minn. 196-200 (41 N. W. 1029); *Burns* v. *Fidelity Real Estate Co.,* 52 Minn. 31-34 (53 N. W. 1017); *Clark* v. *Guest,* 54 Ohio St. 298 (43 N. E. 862); *Wigginton* v. *Ewell* (Ky.), 9 S. W. 285; *Wilson's Assignee* v. *Beam* (Ky.), 14 S. W. 362; *Marsh* v. *Bellew,* 45 Wis. 36-52; *Atlee* v. *Bartholomew,* 69 Wis. 43, 51 (33 N. W. 110); *Whiteaker* v. *Vanschoiack,* 5 Or. 115-118; *Keller* v. *Bley,* 15 Or. 429-433 (15 Pac. 705); *Sayre* v. *Mohney,* 35 Or. 141 (56 Pac. 526); *Harris* v. *Murphy,* 119 N. C. 34 (56 Am. St. Rep. 656); *Augusta Southern R. Co.* v. *Railway Co.,* 106 Ga. 864 (33 S. E. 28); *Slingluff* v. *Andrew Volk B. S. Co.,* 89 Md. 557 (43 Atl. 759); *Foster* v. *Furlong,* 8 N. D. 282; 78 N. W. 986); *Jones* v. *Alley,* 4 Greene (Iowa), 181; *Platt* v. *Butcher.* 112 Cal. 634 (44 Pac. 1060); *Reid* v. *Diamond Plate Glass Co.,* 29 C. C. A. 110 (85 Fed. 193); 1 Chitty, Con-

tracts (11 ed.), 125; Clark, Contracts, p. 93; Browne, Stat. Frauds (3 ed.), §§ 411-417; 2 Reed, Stat. Frauds, §§ 454-459; 2 Rice, Evidence, § 516; *Hasbrouck* v. *Tappen,* 15 Johnson, 200; *Goss* v. *Ld. Nugent,* 5 B. & Ad. 58; *Harvey* v. *Graham,* 5 Ad. & El. 61; *Blood* v. *Goodrich,* 6 Wend. 67; *Williamson* v. *Paxton,* 18 Grat. 475; *Bryan* v. *Hunt,* 5 Sneed, 543; *Stead* v. *Dawber,* 10 Ad. & El. 57; *Emerson* v. *Slater,* 22 How. 28-42; *Swain* v. *Seaman,* 76 U. S. (9 Wall.) 254.

III. The general rule is that an agent employed to do an act is deemed authorized to do it in the manner in which the business intrusted to him is usually done, and such is the presumed limitation upon his power to act for his principal. An agent having authority to sell has power to do only that which is usual in the course of the business, and in the usual and ordinary way. The parol contract claimed to have been made with Schulze was not within the scope of his apparent authority, and was not an act in the usual and ordinary course of business of his agency. It was an extraordinary and unusual act: 2 Morawetz, Corp. §§ 587-616; 2 Greenleaf, Evidence (15 ed.), 64a; Mechem, Agency, §§ 276-312, 399-408; Huffcut, Agency, §§ 7, 103-107; Story, Agency (9 ed.), § 170; 1 Am. & Eng. Enc. Law (2 ed.), 986-1029; *Luse* v. *Isthmus Trans. Ry. Co.* 6 Or. 125 (25 Am. Rep. 506); *Glenn* v. *Savage,* 14 Or. 567, 577 (13 Pac. 442); *Brown* v. *Farmers' Supply Co.* 23 Or. 541-544 (32 Pac. 548); *Durkee* v. *Carr,* 38 Or. 189; *Hoffman* v. *Insurance Co.* 92 U. S. 161; *Western Nat. Bk.* v. *Armstrong,* 152 U. S. 351 (14 Sup. Ct. 572); *National Bank Repub.* v. *Old Town Bank,* 112 Fed. 726; *Lockhart* v. *Wyatt,* 10 Ala. 231 (44 Am. Dec. 481); *Jones* v. *Warner,* 11 Conn. 40-48; *Luke* v. *Griggs,* 4 Dak. 287; *Lawrence* v. *Johnson,* 64 Ill. 351; *Gerrish* v. *Maher,* 70 Ill. 470; *Company* v. *Elliott,* 76 Ill. 67; *Company* v. *McCormic,* 40 Ill. App. 51; *Hess* v. *Company,* 54 Ill. App. 227; *Kinzer* v. *Company,* 64 Ill. App. 437; *Chappel* v. *Raymond,* 20 La. Ann. 277; *Upton* v. *Suffolk County Mills,* 11 Cush. 586; *Cooley* v. *Perine,* 41 N. J. Law, 322 (32 Am. Rep. 210); *Hutchings* v. *Munger,* 41 N. Y. 155, 158; *Smith* v. *Kidd,* 68 N. Y. 130-140 (23 Am. Rep. 157); *Stillwell* v. *Insurance Co.* 72 N. Y. 385-391; *Ritch* v. *Smith,* 82 N. Y. 627-629;

*Argersinger* v. *Macnaughton,* 114 N. Y. 535 (11 Am. St. Rep. 687, 21 N. E. 1022); *Mayer* v. *Dean,* 115 N. Y. 556, 561 (5 L. R. A. 540, 22 N. E. 261); *Edwards* v. *Dooley,* 120 N. Y. 552 (24 N. E. 827); *Sullivan* v. *Insurance Co.* 15 Mont. 534 (39 Pac. 745); *Bohanan* v. *Boston & M. Ry. Co.* 70 N. H. 526 (49 Atl. 103); *Rankin* v. *New England M. Co.* 4 Nev. 78-85; *Franklin* v. *Ezell,* 33 Tenn. (1 Sneed), 497-499; *Strong* v. *Stewart,* 56 Tenn. (9 Heisk.) 137-147; *Adrian* v. *Lane,* 13 S. C. 183; *Jesup* v. *Bank of Racine,* 14 Wis. 359; *Mallory* v. *Mariner,* 15 Wis. 172; *McAlpin* v. *Cassidy,* 17 Tex. 450-462; *Franco-Texan L. Co.* v. *McCormick,* 85 Tex. 416 (34 Am. St. Rep. 815); *Genter* v. *Conglomerate Min. Co.* 23 Utah, 165 (64 Pac. 363); *Williams* v. *Getty,* 31 Pa. St. 461 (72 Am. Dec. 757).

IV. An unauthorized sale of land cannot be ratified except in writing, or by such conduct as would constitute an estoppel, and such ratification must be made by a party informed of the facts. There can be no estoppel unless a party is misled to his prejudice by the one against whom it is set up and does material acts relying upon conduct well calculated to mislead him. It is not claimed that the pretended contract of extension, if any such was made, was known to the defendant or ratified by it in any way. On the contrary, it is claimed that it was distinctly repudiated by Andrews and the company when it first came to their knowledge: *Pollard* v. *Gibbs,* 55 Ga. 45; *Newton* v. *Bronson,* 13 N. Y. 587 (67 Am. Dec. 89); *Haydock* v. *Stow,* 40 N. Y. 363; *Palmer* v. *Williams,* 24 Mich. 329; *Hawkins* v. *McGroarty,* 110 Mo. 546 (19 S. W. 830); Reed, Stat. Frauds, Vol. 1, § 382.

(a) If Schulze was not authorized in writing to make the modified or original contract, ratification thereof must be made in writing and after full knowledge of all the facts. Accepting benefits arising from a contract made by an unauthorized agent is a ratification only of such contract as can be ratified by parol: *Salfield* v. *Sutter County Recl. Co.* 94 Cal. 546 (29 Pac. 1105); *Borderre* v. *Den,* 106 Cal. 594 (39 Pac. 946); *Blood* v. *La Serena Co.* 113 Cal. 221 (41 Pac. 1017, 45 Pac. 252); *Goetz* v. *Goldbaum* (Cal.), 37 Pac. 646; *Maus* v. *Worthing,* 3 Scam. 26; *Bragg*

v. *Fessenden,* 11 Ill. 544; *Ingraham* v. *Edwards,* 64 Ill. 527; *Kopp* v. *Reiter,* 146 Ill. 437 (37 Am. St. Rep. 156, 34 N. E. 942) ; *Ragan* v. *Chénault,* 78 Ky. 545; *Paine* v. *Tucker,* 21 Me. 138 (38 Am. Dec. 255) ; *Heath* v. *Nutter,* 50 Me. 378; *Despatch Line* v. *Bellamy,* 12 N. H. 205 (37 Am. Dec. 203) ; *Blood* v. *Goodrich,* 9 Wend. 55-67; *McDowell* v. *Simpson,* 3 Watts, 129 (27 Am. Dec. 338) ; Story, Agency, § 242; 1 Am. & Eng. Enc. Law (2 ed.), 1211.

(b) Estoppel en pais cannot be shown so as to make valid an unauthorized sale by an agent whose authority is required by law to be in writing: *Marshall* v. *Williams,* 21 Or. 268-276 (28 Pac. 137) ; *Kelley* v. *Hendricks,* 57 Ala. 193; *Videau* v. *Griffin,* 21 Cal. 390; *Platt* v. *Butcher,* 112 Cal. 634 (44 Pac. 1060) ; *Tibble* v. *Anderson,* 63 Ga. 41; *Koch* v. *National Bldg. Assoc.* 137 Ill. 497-503 (27 N. E. 530) ; *Durkee* v. *People ex rel.* 155 Ill. 354-362 (46 Am. St. Rep. 340, 40 N. E. 626) ; *Langan* v. *Sankey,* 55 Iowa, 52-54 (7 N. W. 393) ; *Wigginton* v. *Ewell* (Ky.), 9 S. W. 285; *Brightman* v. *Hicks,* 108 Mass. 246; *Blood* v. *Hardy,* 15 Me. 61; *Wright* v. *Degraff,* 14 Mich. 364; *Hayes* v. *Livingstone,* 34 Mich. 384 (22 Am. Rep. 533) ; *Wardell* v. *Williams,* 62 Mich. 50 (4 Am. St. Rep. 814, 28 N. W. 796) ; *Huyck* v. *Bailey,* 100 Mich. 223-226 (58 N. W. 1002) ; *Bell* v. *Goodnature,* 50 Minn. 417 (52 N. W. 908) ; *Hawkins* v. *Mc-Groarty,* 110 Mo. 546 (19 S. W. 830) ; *Smith* v. *Smith,* 62 Mo. App. 596; *Neldon* v. *Smith,* 36 N. J. Law, 148-157; *Trenton Bk. Co.* v. *Duncan,* 86 N. Y. 221; Hermann, Estoppel, p. 111; 2 Pomeroy, Equity, § 805, note 1, and § 807; 2 Reed, Stat. Frauds, § 733.

V. Where the facts are undisputed, or the facts and all inferences therefrom are conceded, the court must determine as matter of law whether such facts authorize the act of the agent so as to bind the principal: *Connell* v. *McLoughlin,* 28 Or. 230, 232 (42 Pac. 218) ; *Long Creek B. & L. Assoc.* v. *State Ins. Co.* 29 Or. 569, 576 (46 Pac. 366) ; *Franklin Note Co.* v. *Nackey,* 83 Hun, 511; Mechem, Agency, § 105.

VI. Where a vendor makes a contract to sell and convey in good faith, believing himself to be the owner of property, and is afterwards incapable of performing by reason of a defect in

his title, of which he was not aware, or of which both parties had full knowledge, if nothing is paid by the vendee the damages. are merely nominal. In such case the vendee can only recover payments made with interest and expenses incurred in the investigation of the title: 2 Warvelle, Vendors (2 ed.), 1114; 3 Sedgwick, Damages (8 ed.), §§ 1101-1110; *Flureau* v. *Thornhill,* 2 Wm. Bl. 1078; *Worthington* v. *Warrington,* 8 C. B. 134; *Bain* v. *Fothergill,* L. R., 6 Ex., 59 (L. R., 7 H. L., 158); *Buckley* v. *Dawson,* 4 I. R. C. L. 211; *Arthur* v. *Moss,* 1 Or. 193; *Adair* v. *Adair,* 22 Or. 115-133 (29 Pac. 193); *Snodgrass* v. *Reynolds,* 79 Ala. 452 (58 Am. Rep. 601); *Yates* v. *James,* 89 Cal. 474 (26 Pac. 1073); *Allen* v. *Anderson,* 2 Ky. (2 Bibb) 415 (5 Am. Dec. 619); *Davis* v. *Lewis,* 5 Ky. (4 Bibb) 456; *Goff* v. *Hawks,* 28 Ky. (5 J. J. Marsh) 341; *Sanford* v. *Cloud,* 17 Fla. 532; *Stewart* v. *Noble,* 1 Greene (Iowa), 26; *Foley* v. *McKeegan,* 4 Iowa, 1 (66 Am. Dec. 107); *Sweem* v. *Steele,* 5 Iowa, 352, 10 Iowa, 374; *Beard* v. *Delaney,* 35 Iowa, 16; *Sawyer* v. *Warner,* 36 Iowa, 333; *Yokom* v. *McBride,* 56 Iowa, 139 (8 N. W. 795); *Donner* v. *Redenbaugh,* 61 Iowa, 269 (16 N. W. 127); *Tracy* v. *Gunn,* 29 Kan. 508; *Baltimore P. B. L. Soc.* v. *Smith,* 54 Md. 187; *Dunnice* v. *Sharp,* 7 Mo. 71; *Baldwin* v. *Munn,* 2 Wend. 399 (20 Am. Dec. 627); *Peters* v. *McKeon,* 4 Denio, 546; *Conger* v. *Weaver,* 20 N. Y. 140; *Pumpelly* v. *Phelps,* 40 N. Y. 59 (100 Am. Dec. 463); *Leggett* v. *Mutual Life Ins. Co.* 53 N. Y. 394; *Margraf* v. *Muir,* 57 N. Y. 155; *Cockroft* v. *Railway Co.* 69 N. Y. 201; *Northridge* v. *Moore,* 118 N. Y. 419 (23 N. E. 570); *Walton* v. *Meeks,* 120 N. Y. 79 (23 N. E. 1115); *Drake* v. *Baker,* 34 N. J. Law, 358; *Gebbert* v. *Congregation,* 59 N. J. Law, 160 (35 Atl. 1121, 5 Am. St. Rep. 578); *Erickson* v. *Bennett,* 39 Minn. 326 (40 N. W. 157); *Lancoure* v. *Dupre,* 53 Minn. 301 (55 N. W. 129); *Bitner* v. *Brough,* 11 Pa. St. 127; *McDowell* v. *Oyer,* 21 Pa. St. 417; *McClowry* v. *Croghan,* 31 Pa. St. 22; *Hertzog* v. *Hertzog,* 34 Pa. St. 418; *McNair* v. *Compton,* 35 Pa. St. 23; *Burk* v. *Serrill,* 80 Pa. St. 413 (21 Am. Rep. 105); *McCafferty* v. *Griswold,* 99 Pa. St. 270; *Allison* v. *Montgomery,* 107 Pa. St. 455; *Hall* v. *York,* 22 Tex. 641; *Wheeler* v. *Styles,* 28 Tex. 240; *Johnson* v. *Hamilton,* 36 Tex. 270; *Thompson* v. *Guthrie,* 9 Leigh, 101; *Saulters*

v. *Victory,* 35 Vt. 351; *Morgan* v. *Bell,* 3 Wash. St. 554 (16 L. R. A. 614, 28 Pac. 925) ; *Hall* v. *Delaplaine,* 5 Wis. 206 (68 Am. Dec. 57) ; *Combs* v. *Scott,* 76 Wis. 662-670 (45 N. W. 532).

VII. It was incompetent to prove the value of these lands by proof of the stumpage of the timber growing thereon and of the value of such stumpage. Such measure of damage is speculative and misleading, and introduces into the case where the value of the land is to be ascertained uncertain elements depending on conditions that have not happened, and upon contingencies that cannot be legally measured. The verdict returned in this case is clearly excessive, and could not have been reached, excepting upon some such basis of stumpage value permitted to be shown. All the authorities exclude such testimony: Rogers, Exp. Test. (2 ed.), p. 376; *Kansas, etc., Ry. Co.* v. *Vickroy,* 46 Kan. 248 (26 Pac. 698) ; *Railway Co.* v. *Winslow,* 66 Ill. 219-222; *Manning* v. *Lowell,* 173 Mass. 100-103 (53 N. E. 160) ; *Gardner* v. *Brookline,* 127 Mass. 358-361; *Page* v. *Wells,* 37 Mich. 415-420; *Powers* v. *Railway Co.* 33 Ohio St. 429-434; *Searle* v. *Railway Co.* 33 Pa. St. 57-64; *Pennsylvania S. V. R. Co.* v. *Cleary,* 125 Pa. St. 442-451 (11 Am. St. Rep. 913, 17 Atl. 468).

VIII. This contract, if valid, made on March 24, 1883, and if payment was not extended, was one under the terms of which defendant could and did forfeit the money paid, and it thereby terminated the rights of the vendee therein: *Clarno* v. *Grayson,* 30 Or. 111-120 (46 Pac. 426) ; *Sayre* v. *Mohney,* 30 Or. 238 (47 Pac. 197) ; *Holbrook* v. *Investment Co.* 30 Or. 259 (47 Pac. 920) ; *Pease* v. *Baxter,* 12 Wash. 567 (41 Pac. 899).

(a) And even if Schulze or Moores or Andrews refused on behalf of defendant to accept the payment of March 23, 1884, and if all that Neppach and Himpel claim is true, the notice given them by Andrews, April 5, 1885, of the intention of defendant to cancel the contract for failure to pay the two preceding installments then due, was a revocation of any act or word of Schulze or Moores, and justified the cancellation of May 22, 1885, and plaintiff and Himpel acquiesced in such cancellation.

For respondent there was an oral argument by *Mr. Ossian Franklin Paxton* and *William Thomas Burney,* with a brief over

the name of *Paxton, Beach & Simon* and *Mr. Burney,* to this effect.

1. Appellant was bound by the written contract of sale: 2 Cook, Corp. (4 ed.), § 713; 4 Thompson, Corp. § 5289; Mechem, Agency, §§ 84, 279; *Calvert* v. *Idaho Stage Co.* 25 Or. 412 (36 Pac. 24); *United States Bank* v. *Dandridge,* 25 U. S. (12 Wheat.) 64-71; *Supervisors* v. *Shenck,* 72 U. S. 772, 782; *Merchants' Bank* v. *State Bank,* 77 U. S. 604, 644; *Kirk* v. *Hamilton,* 102 U. S. 68, 76; *Martin* v. *Webb,* 110 U. S. 7, 14; *Pittsburg C. & St. L. Ry. Co.* v. *Keokuk Bridge Co.* 131 U. S. 371, 382 (9 Sup Ct. 770); *Union Mutual, etc., Co.* v. *White,* 106 Ill. 67, 75; *Johnson* v. *Hurley,* 115 Mo. 513 (22 S. W. 492); *Gano* v. *Chicago & N. W. Ry. Co.* 66 Wis. 1 (27 N. W. 628).

2. The oral agreement suspending payments and extending the time of the performance of the contract of sale until the termination of the overlap controversy was valid; and, by making and inducing respondent and Himpel to make and act upon that agreement, appellant waived performance at the time specified in the contract of sale and estopped itself from asserting that respondent did not perform in time: 2 Reed, Stat. Frauds, § 462; 1 Warvelle, Vendors, 180; Jones, Evidence, § 450; 1 Greenleaf, Evidence, § 304; 17 Am. & Eng. Enc. Law (1 ed.), 449; *Sayre* v. *Mohney,* 35 Or. 141, 149 (56 Pac. 526); *Baker* v. *Whiteside,* 1 Ill. (Breese) 174 (12 Am. Dec. 168); *Wadsworth* v. *Thompson,* 3 Gilm. (Ill.) 423, 428; *North* v. *Kiser,* 72 Ill. 172, 175; *Longfellow* v. *Moore,* 102 Ill. 289, 294; *Robinson* v. *Batchelder,* 4 N. H. 40; *Cummings* v. *Arnold,* 44 Mass. (3 Metc.) 486, 489 (37 Am. Dec. 155); *Stearns* v *Hall,* 63 Mass. (9 Cush.) 31; *Missouri, K. & T. Ry Co.* v. *Pratt,* 64 Kan. 118 (67 Pac. 464); *Tingley* v. *Fairhaven Land Co.* 9 Wash. 34, 39 (36 Pac. 1098); *Whiting* v. *Doughton,* 31 Wash. 327 (71 Pac. 1026); *Delaney* v. *Linder,* 22 Neb. 274 (34 N. W. 630); *Izard* v. *Kimmel,* 26 Neb. 51, 57 (41 N. W. 1068); *Bowman* v. *Wright,* 65 Neb. 661 (91 N. W. 580, 92 N. W. 580); *Cox* v. *Carrell,* 6 Iowa, 350, 352; *Reed's Heirs* v. *Chambers,* 6 Gill & J. 490, 494; *Kribs* v. *Jones,* 44 Md. 396, 408; *Blood* v. *Hardy,* 15 Me. 61; *Richardson* v. *Cooper,* 25 Me. 450, 452; *Ochsenkehl* v. *Jeffers,* 32 Mich. 481, 483; *Scheerschmidt* v. *Smith,* 74 Minn. 224, 229

(77 N. W. 34); *Dickson* v. *Green,* 24 Miss. 612; *Vanhouten* v. *McCarty,* 4 N. J. Eq. 141, 148; *Long* v. *Hartwell,* 34 N. J. Law. 116, 125; *Keating* v. *Price,* 1 John. Cas. 23; *Fleming* v. *Gilbert,* 3 Johns. 528, 531; *Erwin* v. *Saunders,* 1 Cow. 249, 250 (13 Am. Dec. 520) ; *Franchot* v. *Leach,* 5 Cow. 506, 508; *Wendell* v. *Van Rensselaer,* 1 Johns. Ch. 344, 353; *Young* v. *Hunter,* 6 N. Y. 203, 206; *Friess* v. *Rider,* 24 N. Y. 367, 369 (82 Am. Dec. 308) ; *Ryan* v. *Dox,* 34 N. Y. 307, 318 (90 Am. Dec. 696) ; *Blanchard* v. *Trim,* 38 N. Y. 225, 227; *Organ* v. *Stewart,* 60 N. Y. 413, 419; *Hill* v. *Blake,* 97 N. Y. 216, 222; *Stark* v. *Wilson,* 6 Ky. (3 Bibb) 476; *McNish* v. *Reynolds,* 95 Pa. St. 483, 486; *Wilber* v. *Paine,* 1 Ohio, 248, 256; *Negley* v. *Jeffers,* 28 Ohio St. 90, 100; *Lawrence* v. *Dole,* 11 Vt. 549, 555; *Marsh* v. *Bellew,* 45 Wis. 36, 52.

3. It was for the jury to determine whether or not the making of the oral agreement extending the time of performance of the contract of sale until the settlement of the overlap controversy was within the real or apparent scope of land agent Schulze's authority. The circuit court was right in submitting that question to the jury: Huffcut, Agency, § 103; Mechem, Agency, § 287; Story, Agency (9 ed.), §§ 84, 85; 1 Am. & Eng. Enc. Law (2 ed.), 996; *Hardwick* v. *State Ins. Co.* 20 Or. 547, 558 (26 Pac. 840) ; *Williamson* v. *North Pac. Lum. Co.* 38 Or. 560 (63 Pac. 16, 64 Pac. 854) ; *Merchants' Bank* v. *State Bank,* 77 U. S. 604, 644; *Mining Co.* v. *Bank,* 104 U. S. 192, 194; *Morgan* v. *Neal,* 7 Idaho, 629 (65 Pac. 66) ; *Johnson* v. *Milwaukee Inv. Co.* 46 Neb. 480 (64 N. W. 1100) ; *Thompson* v. *Shelton,* 49 Neb. 644 (68 N. W. 1055) ; *Holt* v. *Schneider,* 57 Neb. 523 (57 N. W. 1086) ; *Reid* v. *Kellogg,* 8 S. Dak. 596 (67 N. W. 687) ; *American Iron Works* v. *Galland Malting Co.* 30 Wash. 178 (70 Pac. 236) ; *Lovejoy* v. *Railroad Co.* 128 Mass. 480; *Hodges* v. *Detroit E. L. & P. Co.* 109 Mich. 547 (67 N. W. 564) ; *Fishbaugh* v. *Spunaugle,* 118 Iowa, 337 (92 N. W. 58) ; *Scott* v. *Wells,* 6 Watts & S. 357 (40 Am. Dec. 568) ; *McMorris* v. *Simpson,* 21 Wend. 609, 613; *Beattie* v. *Railroad Co.* 90 N. Y. 643; *Pickert* v. *Marston,* 68 Wis. 465 (60 Am. Rep. 876, 32 N. W. 550) ; *Roche* v. *Pennington,* 90 Wis. 110 (62 N. W. 946).

4. Land agent Schulze was the general agent of appellant in relation to its lands and land business, and the making of the oral agreement extending the time of performance of the contract of sale until the settlement of the overlap controversy was within the scope of his authority: *Hughes* v. *Lansing,* 34 Or. 118, 124 (75 Am. St. Rep. 574, 55 Pac. 95); *United States Bank* v. *Dandridge,* 25 U. S. (12 Wheat.) 63; *Rolling Mill* v. *Railroad,* 120 U. S. 256, 259; *American Cent. Ins. Co.* v. *McLanathan,* 11 Kan. 533, 549; *Denman* v. *Bloomer,* 11 Ill. 177, 192; *German Fire Ins. Co.* v. *Grunert,* 112 Ill. 68, 71; *Pratt* v. *Railroad Co.* 21 N. Y. 305, 311; *Standard Oil Co.* v. *Insurance Co.* 64 N. Y. 85, 89; *Isaacson* v. *New York C. & H. R. Co.* 94 N. Y. 278, 285 (46 Am. Rep. 142); *Credit Co.* v. *Howe Machine Co.* 54 Conn. 357, 388 (1 Am. St. Rep. 123, 8 Atl. 472); *McCormick H. Mach. Co.* v. *Russell,* 86 Iowa, 556 (53 N. W. 310); *Fishbaugh* v. *Spunaugle,* 118 Iowa, 337 (92 N. W. 58); *White Lake Lum. Co.* v. *Stone,* 19 Neb. 402 (27 N. W. 95); *Huntley* v. *Mathias,* 90 N. C. 101 (47 Am. Rep. 516); *Palmer* v. *Roath,* 86 Mich. 602 (49 N. W. 500); *Baker* v. *Kansas City R. Co.* 91 Mo. 152, 158 (3 S. W. 486); *Scott* v. *Wells,* 6 Watts & S. 357 (40 Am. Dec. 568); *Gano* v. *Chicago & N. W. R. Co.* 66 Wis. 1 (27 N. W. 628); *Kickland* v. *Menasha Woodenware Co.* 68 Wis. 34 (60 Am. Rep. 831, 31 N. W. 471); Story, Agency, § 85; 4 Thompson, Corp. § 5251.

5. The oral agreement extending the time of performance of the contract of sale until the settlement of the overlap controversy was upon sufficient consideration. The mutual agreement of the parties to forebear their respective rights under the contract until that controversy was terminated was sufficient consideration: *Robinson* v. *Bullock,* 66 Ala. 548, 555; *Pioneer Sav. & L. Co.* v. *Nonnemacher,* 127 Ala. 521, 546 (30 So. 79); *Connelly* v. *Devoe,* 37 Conn. 570, 576; *Izard* v. *Kimmel,* 26 Neb. 51, 57 (41 N. W. 1068); *Bowman* v. *Wright,* 65 Neb. 661 (91 N. W. 580); *Cutter* v. *Cochrane,* 116 Mass. 408; *Thomas* v. *Barnes,* 156 Mass. 581 (31 N. E. 683); *Tingley* v. *Fairhaven L. Co.* 9 Wash. 34, 39 (36 Pac. 1098); *Long* v. *Pierce County,* 22 Wash. 330, 348 (61 Pac. 142); *Dyer* v. *Irrigation Dist.* 25 Wash.

80 (64 Pac. 1009); *Brown* v. *Everhard,* 52 Wis. 205 (8 N. W. 725); *Ruege* v. *Gates,* 71 Wis. 634 (38 N. W. 181); Clark, Contracts, § 78.

6. The circuit court correctly charged the jury as to the measure of damages. The measure of respondent's damages was the market value of the land at the time of appellant's refusal to convey, less the unpaid balance of the purchase price. That is the correct measure of damages in all actions of this character: *Mackey* v. *Olssen,* 12 Or. 429 (8 Pac. 357); *Hopkins* v. *Lee,* 19 U. S. (6 Wheat.) 109, 118; *Hamaker* v. *Coons,* 117 Ala. 603, 611 (23 So. 655); *Wells* v. *Abernethy,* 5 Conn. 222, 227; *Brooks* v. *Miller,* 103 Ga. 712, 721 (30 S. E. 630); *Gale* v. *Dean,* 20 Ill. 320, 323; *Plummer* v. *Rigdon,* 78 Ill. 222, 226 (20 Am. Rep. 261); *Doherty* v. *Dolan,* 65 Me. 87 (20 Am. Rep. 677); *Kirkpatrick* v. *Downing,* 58 Mo. 32, 38 (17 Am. Rep. 678); *Hartzell* v. *Crumb,* 90 Mo. 629, 635 (3 S. W. 59; *Krepp* v. *St. L. & C. R. Co.* 99 Mo. App. 94, 101; *Wasson* v. *Palmer,* 17 Neb. 330 (22 N. W. 773); *Shaw* v. *Wilkins,* 27 Tenn. (8 Humph.) 647 (49 Am. Dec. 692, 696); *Boardman* v. *Keeler,* 21 Vt. 78, 84; *Cade* v. *Brown,* 1 Wash. 401 (25 Pac. 457); *Muenchow* v. *Roberts,* 77 Wis. 520 (46 N. W. 802); *Johnson* v. *McMullin,* 3 Wyo. 237 (4 L. R. A. 670); *Old Colony R. Corp.* v. *Evans,* 72 U. S. (6 Gray) 25, 34; 2 Warvelle, Vendors, 959, 960; 3 Sedgwick, Damages (8 ed.), § 1012; 2 Sutherland, Damages (2 ed.), § 579.

7. In any view of the law as administered by the American courts, that is the correct measure of damages in the case, because where the vendor knows when he makes a contract to sell lands that he has not title, or that his title is in doubt, or where he has in fact title, but he refuses to convey, or where it is in his power to remedy the defect in his title but refuses or neglects to do so, the vendee is entitled to recover the value of the lands at the time they ought to have been conveyed: *Snodgrass* v. *Reynolds,* 79 Ala. 452 (58 Am. Rep. 601); *Morgan* v. *Stearns,* 40 Cal. 434; *Irwin* v. *Askew,* 74 Ga. 581, 585; *Sanford* v. *Cloud,* 17 Fla. 532, 554; *Plummer* v. *Rigdon,* 78 Ill. 222 (20 Am. Rep. 261); *Foley* v. *McKeegan,* 4 Iowa, 1, 8 (66 Am. Dec. 109); *Sweem* v. *Steel,* 5 Iowa, 353; *Lewis* v. *Lee,* 15 Ind.

499; *Case* v. *Wolcott,* 33 Ind. 5; *Duncan* v. *Tanner,* 25 Ky. (2 J. J. Marsh) 399; *Tracy* v. *Gunn,* 29 Kan. 362; *Brigham* v. *Evans,* 113 Mass. 538, 540; *Cannell* v. *McClean,* 6 Harr. & J. (Md.) 297; *Allen* v. *Atkinson,* 21 Mich. 351, 362; *Hammond* v. *Hannin,* 21 Mich. 373 (4 Am. Rep. 490); *Barbour* v. *Nichols,* 3 R. I. 187; *Carver* v. *Taylor,* 35 Neb. 429, 434 (53 N. W. 386); *Chartier* v. *Marshall,* 56 N. H. 478; *Drake* v. *Baker,* 34 N. J. Law, 358; *Driggs* v. *Dwight,* 17 Wend. 71 (31 Am. Dec. 283); *Trull* v. *Granger,* 8 N. Y. 115; *Bush* v. *Cole,* 28 N. Y. 261 (84 Am. Dec. 343); *Taylor* v. *Barnes,* 69 N. Y. 430, 434; *Lee* v. *Russell,* 30 N. C. (8 Ired. L.) 526; *Nichols* v. *Freeman,* 33 N. C. (11 Ired. L.) 99; *Hartzell* v. *Crumb,* 90 Mo. 629 (3 S. W. 59); *Cooper* v. *Simpson,* 41 Minn. 46 (16 Am. St. Rep. 667); *Dustin* v. *Newcomer,* 8 Ohio, 50; *Hopkins* v. *Yowell,* 13 Tenn. (5 Yerg.) 305; *Clark* v. *Locke,* 33 Tenn. (11 Humph.) 300; *Phillips* v. *Herndon,* 78 Tex. 378 (22 Am. St. Rep. 59, 14 S. W. 857); *Dunshee* v. *Geoghegan,* 7 Utah, 113 (25 Pac. 731); *Cade* v. *Brown,* 1 Wash. 401 (25 Pac. 457); 2 Sutherland, Damages (2 ed.), § 581.

8. The circuit court correctly ruled upon the admissibility of evidence going to show the value of lands: *Boom Co.* v. *Patterson,* 98 U. S. 403, 408; *Snodgrass* v. *Reynolds,* 79 Ala. 452, 462 (58 Am. Rep. 601); *Little Rock, etc., Ry.* v. *McGehee,* 41 Ark. 202; *Little Rock J. Ry.* v. *Woodruff,* 49 Ark. 381, 391 (4 Am. St. Rep. 51); *Illinois & W. R. Co.* v. *Von Horn,* 18 Ill. 258, 260; *Haslam* v. *G. & S. W. R. Co.* 64 Ill. 353, 355; *Lafayette B. & M. R. Co.* v. *Winslow,* 66 Ill. 219, 221; *Chicago & E. R. Co.* v. *Jacobs,* 110 Ill. 414, 416; *Dupuis* v. *Chicago & N. W. Ry. Co.* 115 Ill. 97 (3 N. E. 720); *Dickenson* v. *Inhabitants of Fitchburg,* 79 Mass. (13 Gray) 546-556; 1 Sutherland, Damages (2 ed.), § 450.

. MR. JUSTICE BEAN delivered the opinion of the court.

The controlling propositions made by the defendant on this appeal are: First, there never was any agreement or understanding for an extension or waiver of time of performance; second, if such an agreement were made, Schulze had no authority to act for or to bind the defendant thereby; third, if such

contract were made, and Schulze had authority to bind the defendant, it was void because within the statute of frauds, and not in writing; and fourth, the court erred in ruling and instructing the jury that the measure of damages for a breach of the contract was the value of the land agreed to be conveyed at the time of the breach, less the balance due on the purchase price, and in admitting evidence tending to prove such value.

1. The first two points involve questions of fact. They were submitted to and decided by the jury adversely to the defendant, and if there was evidence to support the verdict, it cannot be disturbed. We are only required, therefore, to look far enough into the record to ascertain whether or not this is so, and not to determine whether it is in accordance with the weight of the testimony.

2. The plaintiff testified that he was a half owner with Himpel in the contract for the purchase of the land, and that such fact was known to the defendant and its officers at the time it was made; that after the contract had been executed, in the latter part of the summer or early fall of 1883, Himpel told him that there was a question about the title to the land which the defendant had agreed to sell to them, and that Schulze had been talking to him about it; that thereupon he and Himpel immediately went to the office of Schulze to see about the matter, and Schulze told them that there was a dispute between the defendant and the Northern Pacific Railroad Co. concerning the land, and in his (Schulze's) opinion the Northern Pacific would finally get it; that in view of this controversy he would not accept any further payments on the contract with the defendant until it was settled; that he was the land agent of each company, and that, if the Northern Pacific Co. got the land, he would sell it to them on the same terms, but in that event they must take their money back from the defendant without interest, and without making any trouble; that, if the Northern Pacific should lose the land, they should commence making the payments on their contract with the defendant the same as before; that witness and Himpel agreed to this arrangement, and relied upon the same; that they heard nothing more about the matter, but when the second payment became due witness went to the office

of Schulze to inquire about it, and, finding him out of the city, and having no written contract for the extension of the time of payment, offered to make the second payment to the clerk in charge of the office, who received the money, and made the proper credit on the contract.

Continuing, he says that when Col. Moores, who was acting as land agent during Schulze's absence, learned of the payment, he refused to accept it, and told witness that he had positive instructions from Schulze not to take the money or receive any more payments on the land until the overlap controversy was settled; that the money was then handed back to witness, and Moores erased the credit on the contract by drawing lines with red ink through it; that nothing more was done until about the time the third payment became due, when plaintiff and Himpel again went to the office of the defendant to inquire about the overlap controversy, and to see whether it was ready to receive payments on the contract, and there had a conversation with Mr. Andrews, who in the mean time had succeeded Schulze as land agent; that witness asked Andrews about the controversy, and whether he and Himpel should go ahead with their payments, and talked over with him the arrangements they had made with Schulze; that Andrews said: "Schulze is certainly mistaken about our not getting the land," whereupon Himpel said: "We will make the payments any time that you are prepared to make your deed. We stand prepared to pay the whole contract right up at any time. Are you ready now?" And Andrews said: "No, we are not in a position to make a deed now; there is only one thing to be done, and that is to let the matter rest until this controversy between the Oregon & California Railroad Co. and the Northern Pacific Railroad Co. is settled, and when it is I will personally notify you"; that Andrews took the addresses of witness and Himpel, and they went away from the office; that a few weeks later when witness returned from one of his trips in the country, he found a note to him from Andrews, requesting him to deliver an inclosed sealed letter to Himpel; that on May 3, 1885—the first time he saw Himpel thereafter—he delivered the note to him; that it was from Andrews; dated April 4, 1885, and informed Himpel that the second and third payments on the

contract with the defendant had not been made, and, unless they were within 30 days from date, the contract would be canceled; that witness and Himpel went immediately to see Andrews, and asked him what the letter meant, and Andrews said: "I have sold the land to other parties, and your contract is canceled; you are too late"; that witness and Himpel protested against this action, but Andrews said: "No use to talk about it at all. You are too late. The land is sold"; that they could get no further satisfaction out of Andrews, and so went away.

Himpel corroborates this testimony of the plaintiff, and Schulze himself testified that the refunding to the plaintiff and Himpel of the second payment tendered by them on the contract was made by Moores in pursuance of a general order given by him that no further payments were to be received on the contract because the title to the land was in dispute; that "I gave orders to this effect to my assistant, I. R. Moores, and told purchasers of lands under like conditions at every opportunity that the company would not accept any further payments on lands of this character until the question of title had been settled, but that mean while the contracts should not be forfeited. * * I especially remember in this connection a number of sections sold to the late A. G. Cunningham. This gentleman also tendered payment on his contract, but I refused to accept it for the reasons stated. * * I had also told Himpel before (March 24, 1884)—Himpel and Mr. Neppach, to whom the contract under consideration is now assigned—what the policy of the company would be." This testimony was clearly sufficient for the jury to find in favor of the plaintiff upon the issue of the extension agreement or waiver of the time of performance by the plaintiff and Himpel of the contract made by them with the defendant for the purchase of the land in question. Counsel make a strong and persuasive argument, based upon alleged contradictions and inconsistencies in the testimony and the pleadings and the conduct of the parties, that no such agreement was made or intended to be made; but we are not authorized to review the facts to ascertain whether, in our opinion, the verdict is in harmony therewith. It is sufficient that there was competent evidence to support it.

3. Counsel argue that Schulze had no authority to act for or bind the defendant by such agreement or understanding. This was also a question for the jury, under proper instructions from the court, and there is no contention that such instructions were not given. Schulze's authority was not in writing, and there was no writing introduced in evidence fixing the nature or scope thereof. That had to be ascertained as a fact from divers and sundry items of evidence showing the general course of business in the land department of the defendant during the time Schulze acted as land agent, the authority he exercised, and the duties he performed with the knowledge and approval of the defendant. Many of the facts from which this question was to be determined were in dispute. The defendant contended that Schulze was a mere selling agent, with authority to make sales of land on specified terms and conditions, and that he had no power to make an agreement extending the time of payment by a purchaser or to waive a strict compliance with the contract. The plaintiff, on the other hand, contended that he was the general agent of the defendant, and in charge of its entire land business in Oregon, with full power and authority to represent it in relation thereto, and make any contract with reference to the sale and conveyance of lands which might to him seem advantageous to his principal, or which the exigencies of the business might require. A vast amount of evidence, not necessary to be detailed, was offered by both parties in support of their respective contentions. It was from such testimony that the power and authority of Schulze and the nature and scope of his agency were to be ascertained and determined. The appointment or authority of an agent is a question of fact; what he may do by virtue thereof is a question of law. When the appointment and authority, real or apparent, are admitted, or are not in controversy, the court may declare whether they empower the agent to perform the particular act in question. When, however, there is a dispute as to the appointment or the authority conferred, the fact of such appointment or authority must be found by the trier of fact: *Glenn* v. *Savage,* 14 Or. 567 (13 Pac. 442) ; *Hardwick* v. *State Ins. Co.* 20 Or. 547, (26 Pac. 840) ; *Connell* v. *McLoughlin,* 28 Or. 230 (42 Pac. 218) ; *Long Creek Build. Assoc.* v. *State Ins. Co.* 29 Or. 569

(46 Pac. 366) ; *Anderson* v. *Adams,* 43 Or. 621 (74 Pac. 215).

4. That there was sufficient evidence to support the verdict of the jury that Schulze had authority to make the contract or agreement in question under the law is hardly open for argument.    The evidence showed or tended to show that he was appointed land agent of the defendant by its president, and served as such from 1878 to 1884, during which time the defendant was engaged in practically two lines of business and owned and dealt with two classes of property—the one a line of railroad from Portland to the southern part of the State, and the other the listing, selection, sale, disposition, and management of the lands granted to it by congress.    The two departments were conducted separately and under different managements.    The office of the land department was during a great part of the time in one building; that of the railroad proper in another.    The land department was in the sole and exclusive charge of Schulze, who had under him a number of clerks and assistants, who took their orders from him.    He listed and selected the lands accruing to the defendant under its grant, fixed the prices and terms at which it was to be sold, made and executed all contracts in reference thereto, and received and receipted for all moneys due on account thereof.    During his term of office he thus made and executed on behalf of the defendant more than 1,200 land contracts, duplicates of which were retained by the company, and comprise five large volumes, which were introduced and admitted in evidence.    He made various agreements with many of the purchasers from time to time, extending the time of payment or waiving a default for divers and sundry reasons.    He was advertised extensively by the defendant in the newspapers and by circulars and maps as its land agent and in charge of its land department, and as the person to whom intending purchasers should apply.    In short, he was held out as the authorized representative of the company in that respect, and transacted its entire business in relation to the acquisition, sale, and disposition of its lands.    His authority and acts were never disavowed or disapproved by his principal.    He testified that he had full charge of the land interests of the defendant in Oregon, made and signed all contracts for the sale thereof, fixed the terms and prices at

which the land would be sold, had charge of its selection and of all the legal business of the company in the local land office; that his authority was never questioned by the company, and he did not remember a single instance where his right to act had been brought in question, or a single act done by him which was not acquiesced in by the company; that he always held that he had full authority to make contracts relating to the disposition of the company's lands. The board of directors and officers of the defendant had knowledge of the authority Schulze was exercising, and what he was doing thereunder, for he made reports to them from time to time of the land sales made by him, and obtained their orders authorizing the execution of deeds to the purchasers. The president of the company resided in New York, and the executive head in Oregon testified that he did not remember ever having been consulted by Schulze as to the management or sale of the lands. Now, it needs no citation of authority to show that the general agent of a corporation clothed with the power thus conferred upon and exercised by Schulze to manage, sell, and dispose of its lands can bind his principal by a valid contract or agreement extending the time of payment by a purchaser of such lands or waiving a strict compliance by him with the contract in that regard.

"The rule is elementary and universal," says Mr. Justice MOORE, "that every grant of power by a principal to his agent, where no limitations are apparent, is to be construed as carrying with it, as an incident thereto, the authority to do all things proper, usual, necessary, and reasonable to carry into effect the objects and purposes sought to be accomplished by the authority conferred": *Durkee* v. *Carr,* 38 Or. 189 (63 Pac. 117), and authorities cited. That it was the natural and reasonable thing, under the circumstances, for Schulze to make the contract with the plaintiff and Himpel extending the time of payment is apparent. The company was bound by a written agreement to convey a large tract of valuable land upon the payment of the purchase price at certain designated dates and in specified amounts. They were ready and willing to make the payments as agreed upon. The controversy between the defendant and the Northern Pacific Railroad Co. put it out of the defendant's

power for the time being to comply with its contract. If they tendered the payments, it was bound to receive them or be liable to litigation for a refusal. If the payments were made as stipulated, and the money received and accepted by the company, and it should ultimately lose the land, it would not be able to comply with its contract, and therefore be liable in damages for a breach. It was to extricate the defendant from this annoying situation that the agreement was made to extend the time of payment and to waive a strict performance of the contract by plaintiff and Himpel. Such agreement was presumably to the advantage of the company, and was such as a prudent man would probably have made under the same circumstances. It was the "proper, usual, necessary, and reasonable" thing to do, and clearly within the scope and authority of an agent intrusted with the entire management and control of the land business of a corporation: *Johnston* v. *Milwaukee & W. Inv. Co.* 46 Neb. 480 (64 N. W. 1100) ; *Anderson* v. *Coonley,* 21 Wend. 279; *Pratt* v. *Hudson River R. Co.* 21 N. Y. 305; *Fishbaugh* v. *Spunaugle,* 118 Iowa, 337 (92 N. W. 58) ; *National Bank of Repub.* v. *Old Town Bank,* 112 Fed. 726 (50 C. C. A. 443).

5. But it is argued that the extension contract or agreement was void because it was an oral modification of a contract within the statute of frauds. Ever since the decision of Lord ELLEN-BOROUGH in *Cuff* v. *Penn,* 1 Maule & S. 21, holding that a subsequent parol modification of the time of performance specified in a contract within the statute of frauds was valid, there has been much learning exhibited by judges and text-writers in the discussion of such question. The settled doctrine in England now seems to be contrary to that case, and it is now held that an agreement required by the statute of frauds to be in writing cannot be subsequently changed or modified as to the time of performance, or in any other respect, by an oral executory contract: *Stead* v. *Dawber,* 10 Ad. & El. 57; *Hickman* v. *Haynes,* L. R. 10 C. P. 598. In this country the cases are in conflict. Some of the courts, notably of Massachusetts, have followed *Cuff* v. *Penn,* making a distinction between the contract, which the statute requires to be in writing, and the time of performance, to which it is held the statute does not apply. The courts in

other states, and probably a majority, deny the validity of such
an agreement, unless acted upon by the parties, and hold that
a part of a contract required by the statute to be in writing
cannot rest in parol. The cases are referred to and discussed in
29 Am. & Eng. Enc. Law (2 ed.), 824; 30 Am. Law Rev. 863;
Wood, Frauds, 758; Benjamin, Sales (7 ed.), § 216; 2 Reed, Stat.
Frauds, § 454 et seq.; Brown, Stat. Frauds (4 ed.), § 411; *Abell*
v. *Munson,* 18 Mich. 306 (100 Am. Dec. 165, 169, note) ; *Brad-
ley* v. *Harter,* 156 Ind. 499 (60 N. E. 139) ; *Warren* v. *Mayer
Mfg. Co.* 161 Mo. 112 (61 S. W. 644) ; *Rucker* v. *Harrington,*
52 Mo. App. 481; *Cummings* v. *Arnold,* 3 Metc. (Mass.) 486
(37 Am. Dec. 155) ; *Stearns* v. *Hall,* 9 Cush. 31; *Dana* v. *Han-
cock,* 30 Vt. 616; *Swain* v. *Seamens,* 76 U. S. (9 Wall.) 254 (19
L. Ed. 554). The point has never been decided in this State.
The oral agreement held void in *Whiteaker* v. *Vanschoiack,* 5 Or.
113, was more than for a mere extension of time of performance,
and introduced new terms into the agreement. In *Sayre* v.
*Mohney,* 35 Or. 141 (56 Pac. 526), the written contract provided
that the purchase price of the land should be paid at Salem, but
was silent as to the particular place in the city where the pay-
ment should be made, and it was held that a subsequent oral
agreement, made upon sufficient consideration, designating the
place of payment, was valid.

But we deem it unnecessary to decide at this time whether a
contract required by the statute to be in writing can be altered
as to the time or manner of performance by a subsequent parol
executory agreement between the parties. Conceding the law to
be as contended for by the defendant, and that the oral extension
agreement or contract was invalid as an executory contract, and
did not change or modify the terms of the written agreement, it
was, nevertheless, acted upon by the plaintiff and Himpel, and the
defendant cannot now assert its invalidity to their injury. The
stipulation as to the times of payment by them was for the benefit
of the defendant, and could be waived by it: 2 Reed, Stat.
Frauds, § 459 ; 2 Warvelle, Vendors (2 ed.), § 819; *Blood* v.
*Hardy,* 15 Me. 61. It did so when it made the agreement that
no subsequent payments should be made on the contract until
the overlap controversy should be settled and such agreement

was acted upon by them. The agreement was made at the defendant's request, and for its benefit. It had contracted to sell a large tract of land which it feared it would be unable to convey when the time for performance by it arrived. To extricate itself from this dilemma it requested of the vendees a modification of the contract so that the payments would not be made until the controversy as to the title should be settled. The plaintiff and Himpel, in reliance upon this agreement, and at the request of the defendant, refrained from making the payments as they became due, although they were ready and willing to do so. It would certainly be unreasonable to hold, under such circumstances, that the defendant can now insist upon a forfeiture of the contract on account of the failure to make such payments. "We know of no principle of law," says Mr. Chief Justice ANDREWS, in *Thomson* v. *Poor*, 147 N. Y. 402 (42 N. E. 13), "which will permit a party to a contract, who is entitled to demand the performance by the other party of some act within a specified time, and who has consented to the postponement of the performance to a time subsequent to that fixed by the contract, and where the other party has acted upon such consent, and in reliance thereon has permitted the contract time to pass without performance, to subsequently recall such consent and treat the nonperformance within the original time as a breach of the contract." The same principle is announced by the Supreme Court of Wisconsin in *Marsh* v. *Bellew*, 45 Wis. 36, 52. It is there said: "We are of the opinion that the waiver of payment at the time fixed in a contract for the sale of real estate, or the extension of the time for such payment, is not such a variation of the terms of the written contract as to exclude it from being received in evidence in a court of equity; and that in all cases where such waiver or extension of time has been given, either by parol or otherwise, and the purchaser has acted upon the faith of such extension or waiver, the courts have held the vendor bound by his contract. Most of the cases put it on the ground that time of payment, as a general thing, in such contracts, is not of the essence of the contract; and some upon the ground that it would be inequitable to permit the vendor, after having induced the vendee to go on with the contract, and expend his

time and money in the further performance thereof, after there had been a technical or other forfeiture thereof, to insist upon the forfeiture, and refuse to perform the contract, because the payments were not made according to the terms of the original contract."

And the doctrine is thus summed up by LINDLEY, J., in *Hickman* v. *Haynes,* L. R. 10 C. P. 598, 605: "The proposition that one party to a contract should thus discharge himself from his own obligations by inducing the other party to give him time for their performance is, to say the least, very startling, and, if well-founded, will enable the defendants in this case to make use of the statute of frauds, not to prevent a fraud on themselves, but to commit a fraud upon the plaintiff. It need hardly be said that there must be some very plain enactment or strong authority to force the court to countenance such a doctrine. The statute of frauds contains no enactment to the effect contended for." The statute of frauds may not be invoked to perpetrate a fraud, nor will a party be permitted to insist upon the statute to protect him in the enjoyment of advantages procured from another, who, relying on an oral agreement, has acted and placed himself in a situation in which he must suffer wrong and injustice if the agreement is not enforced. A party to a contract for the sale of land, who knowingly consents or agrees to a postponement of the performance by the other at the time specified of some stipulation for his benefit, cannot, after the other has acted upon such consent, avail himself of the default, and treat the contract as forfeited, although the performance of the stipulation at the time specified may have been made of the essence of the contract: 29 Am. & Eng. Enc. Law (2 ed.), 826; *Missouri, K. & T. R. Co.* v. *Pratt,* 64 Kan. 118 (67 Pac. 464); Brown, Stat. Frauds, §§ 424, 425; *Longfellow* v. *Moore,* 102 Ill. 289; *Sheridan* v. *Nation,* 159 Mo. 27 (59 S. W. 972); *Long* v. *Hartwell,* 34 N. J. Law, 116; *Scheerschmidt* v. *Smith,* 74 Minn. 224 (77 N. W. 34); *Smiley* v. *Barker,* 83 Fed. 684 (28 C. C. A. 9); *Stearns* v. *Hall,* 9 Cush. 31; *Dodge* v. *Wellman,* 1 Abb. Dec. 512; *Wilber* v. *Paine,* 1 Ohio, 251; *Fleming* v. *Gilbert,* 3 Johns. 528.

It may be suggested that the oral agreement between the plaintiff and Himpel and Schulze amounted to more than a

mere extension of time for the performance of the contract by the vendees, but was in the nature of a modification or addition to the agreement itself, because Himpel and the plaintiff agreed that, in case defendant failed to acquire title to the land, they would accept a return of the money paid on the contract without interest, and waive any claim for damages against the defendant for failure to perform. But this was a mere contingent agreement in the nature of a promised waiver by them of a remedy which they might have against the defendant in the future, based upon the happening of an event which did not, and cannot now, occur, and on account of which nothing is claimed in this action. It can in no way affect the rights of the defendant, or relieve it from the effect of its agreement to waive the time of performance after such agreement has been acted upon by the vendees.

If the extension agreement was not valid and binding on the defendant because within the statute of frauds, and amounted to nothing more than an oral stipulation to waive a strict performance of the contract, it probably could have been revoked at any time upon giving the vendees notice of its intention to do so, and a reasonable time after such notice in which to make the prior payments. No such action is pleaded as a defense, or was ever taken by it. Andrews' letter to Himpel of April 4, 1885, makes no reference to the extension agreement, or to the understanding between the vendees and Schulze as to the time in which the payments should be made, or of any intention to revoke or rescind such agreement. Moreover, a reasonable time was not allowed the vendees in which to make the payments after the receipt of such letter. It was dated April 4, 1885, and was not received by Himpel, to whom it was addressed, until May 3d, the day on which the time allowed to make the payments expired.

6. The remaining question involves the competency of evidence given by some of the witnesses as to the value of the timber growing on the land which the defendant contracted and agreed to sell to plaintiff and Himpel, and the proper measure of damages for the breach of the contract. It is the law that the value of real estate cannot be shown by proving the value

of the several constituent elements of value, and then adding these together, taking the aggregate amount as the value of the whole.    It would manifestly not be proper, as Mr. Justice COOLEY remarks, to say that "a thousand timber trees upon it are worth so much, a hill of gravel so much, a deposit of valuable clay so much, and when these are all removed the land is still worth so much for agricultural purposes.    Consequently, as it is, it is worth the aggregate of all these sums": *Page* v. *Wells,* 37 Mich. 415, 422.    Such an estimate of value would be unfair and misleading, and would introduce into the case speculative and uncertain questions, and would detract from the real question involved, which is, what is the market value of the land as it is? A witness called to testify as to the value of land can take into account everything which goes to make up the value, but he must confine his testimony to the market value of the land as a whole, and not to its several parts.    A witness, however, who has given an opinion of value, may be asked on his examination in chief to state the grounds of his opinion: 2 Sutherland, Damages (3 ed.), § 450; *Haslam* v. *Galena & So. Wis. R. Co.* 64 Ill. 353.

This is the rule adopted and adhered to by the trial court. The court ruled that the value of the land in question could not be ascertained from the estimated stumpage value of the timber growing thereon, but that a witness who had given an opinion as to the market value of the land might state the facts upon which such opinion was based, which in this case involved the character and value of the timber.    The witnesses were first asked to give their opinions as to the market value of the land, and, after they had done so, were permitted to state the amount and value of the stumpage as showing upon what they based their opinions; and this they had a right to do under the law, as we understand it.    The court instructed the jury that the measure of damages in this case would be the market value of the land at the time of the breach of the contract, less the amount of the unpaid purchase price.    Mr. Warvelle says, in speaking on the subject of the measure of damages in an action by a vendee against a vendor for the breach of a contract to convey real estate: "The rule is well established that where the

vendor has title, and for any reason refuses to convey it, as required by the terms of the agreement, he shall respond in damages, and make good to the vendee whatever he may have lost by reason of the breach. So far as mony can do it, the vendee must be placed in the same situation with regard to damages as if the contract had been specifically performed; and the measure of such damages will ordinarily be the difference between the contract price and the value of the property at the time of the breach. This has always been regarded as the true measure of damages in actions on contracts for the future delivery of marketable commodities, and it makes no difference in principle whether the contract be for the sale of real or personal property. In both instances the vendee is entitled to have the thing agreed for at the contract price, and to sell it himself at its increased value, and if it be withheld the vendor should make good to him the difference": 2 Warvelle, Vendors (2 ed.), § 936. Mr. Sedgwick and Mr. Sutherland lay down the same rule: 3 Sedgwick, Damages (8 ed.), § 1012; 2 Sutherland, Damages (3 ed.), §§ 578, 579. And so are the authorities: 29 Am. & Eng. Enc. Law (2 ed.), 724.

7. Where a vendor acting in good faith and without knowledge of a defect in his title agrees to sell and convey land, and is unable to do so because of a failure of title, or if, upon discovery of such defect, he refuses further to perform or to be bound by the contract, leaving the vendee to his action for damages, there is some conflict in the authorities as to whether the vendee can recover anything more than the amount paid, with interest. No such case, however, is presented here. The defendant knew, or was chargeable with knowledge, at the time the contract was made, of the condition of its title, and that the land which it agreed to sell to the plaintiff and Himpel was included in the limits of a prior grant to the Northern Pacific Railroad Co. It did not at any time attempt to repudiate or rescind the contract on account of the controversy about the title, or decline to be bound further thereby on that account, but, on the contrary, induced the vendees to make an agreement or contract with it for its benefit, and upon which they relied and acted, to postpone performance until the title was settled. It does not

plead a want of title as a defense or in mitigation of damages, but avers that it has selected the lands and filed lists thereof in the local land office, which have been approved, and "has duly complied with the terms of such act of congress as aforesaid, and is entitled to patents as aforesaid." It therefore, for the purposes of this case and under the pleadings, occupies the same situation as a vendor who has title to land but refuses to convey. In such case the authorities are that the vendee may recover for the loss of his bargain, and that the measure of damages is the value of the land agreed to be conveyed at the time of the breach, less the amount, if any, of the purchase price unpaid. This was the rule adopted by the trial court.

There being no error in the record, the judgment is affirmed.

AFFIRMED.