Argued November 10, decided November 20, 1913.

## SCOTT *v.* HUBBARD.*

(136 Pac. 653.)

**Appeal and Error—Review—Questions of Fact.**

1. Though an equity case is tried anew on appeal, and, when a question of fact is involved, all the evidence brought up is examined independent of the trial court's findings, such findings, where the testimony is conflicting, are entitled to great weight, and where the testimony was seemingly balanced, it would be taken to preponderate in favor of the party for whom the trial court found.

---

*As to the right to rescind contract for failure or inability of other party to perform within time designated, where time is not of the essence of the contract, see note in 21 L. R. A. (N. S.) 691.

REPORTER.

**Estoppel—Representations—Future Events.**

2. The doctrine of estoppel *in pais* applies only to representations as to past or present transactions, and not to promises as to the future which, if valid at all, must be binding as contracts.

**Contracts—Excuses for Nonperformance—Performance Prevented by Other Party.**

3. A party to a contract, who prevents another party from strictly performing its terms, may not avail himself of the default thereby occasioned.

**Frauds, Statute of—Modification of Contract—Time of Performance.**

4. As a general rule, where the time for a sale of real property has been postponed by a parol agreement upon which the vendee has relied, the statute of frauds cannot be invoked to perpetrate a fraud.

**Frauds, Statute of—Modification of Contract—Time of Performance.**

5. Where a party to a written contract orally agrees to extend the time for performance, he is estopped from taking advantage of the noncompliance with the terms of the writing, and the other party has the extended time within which to perform.

**Contracts—Modification—Consideration—Necessity.**

6. A parol agreement, extending or enlarging the time for performance of a written contract, must ordinarily be supported by a sufficient consideration, but need not be if mutual acts are to be performed by the parties.

[As to forbearance to sue as consideration for promise, see notes in 60 Am. Dec. 524; 36 Am. St. Rep. 145.]

**Evidence—Parol Evidence to Vary Writing.**

7. Evidence is admissible to show that the time of performance of a written contract within the statute of frauds has been enlarged by a subsequent oral agreement.

[As to parol evidence to vary a writing, see note in 56 Am. St. Rep. 659.]

**Vendor and Purchaser—Time of Payment—Excuses for Delay.**

8. Where, under an option to purchase land, providing that it would be effective only so long as the holder of the option paid $50 a month in advance, and that time was of the essence of the agreement, the owner refused to accept three monthly installments, which were thereupon left for him at a bank, from which he withdrew them some time after they were due, he created the impression that time was not of the essence, and, without giving any notice of change in his intention, he could not forfeit the agreement because of a delay of one day in paying a subsequent installment.

**Vendor and Purchaser—Contracts—Modification—Consideration.**

9. Where an owner of land who had given an option to purchase, providing that it should be effective only so long as the holders paid $50 a month in advance, and that time was of the essence of the agreement, on May 25th requested the holders to advance $600 for a

year's option, and induced them to believe that by advancing this sum the installment due on or before May 31st might be paid during the first week of June, the holders' promise to pay such sum was a sufficient consideration for the extension, and the owner was therefore estopped from asserting a forfeiture because of the failure to tender such installment during the month of May.

From Jackson: Frank M. Calkins, Judge.

En Banc. Statement by Mr. Justice Moore.

This is a suit by William Scott against L. P. Hubbard, Mabel Zimmer and Mendon F. Schutt to rescind a contract. The plaintiff, on December 31, 1908, entered into a written agreement with A. B. Saling, whereby he stipulated to sell and convey to the latter, his heirs or assigns, 1,365.82 acres of land in Jackson County, Oregon, particularly describing the premises, at $22.50 an acre, amounting to $30,730.95, of which sum $10,000 was to be paid when the election to take the property was exercised, and the remainder in three equal, annual installments, with interest at 6 per cent. Clauses of the contract are as follows:

"It is expressly understood and agreed that William Scott reserves all coal, oil or gas, also minerals and stone of whatever kind in and under above described lands, with the right to go on the premises and explore and mine for same not nearer than 300 feet from any building, and this option will be effective as long as A. B. Saling continues to pay William Scott the sum of $50 per month in advance, and no longer, provided, however, this option shall terminate and all sums paid hereunder be forfeited absolutely unless the same is exercised before five years from this date. No part of the $50 monthly payments shall be applied on the purchase price of the land. It is also agreed that any improvements put upon the land at any time since December 31, 1908, or at any time thereafter, including care of fruit trees, are to be added to the purchase price and that time is of the essence of this agreement."

The terms of the contract were made binding upon the parties thereto, their heirs and assigns. Saling transferred all his interest in the agreement to the defendant L. P. Hubbard, who sold and assigned an undivided two thirds of his interest in the real property to the defendants Mabel Zimmer and Mendon F. Schutt. The sum of $50 for the option maturing the succeeding month was regularly tendered on or before the last day of the preceding month, including the payment for May, 1911. When so offered, the installments for January, February, and March, 1911, were refused by the plaintiff, who asserted that the contract was at an end, because the option was not exercised by the payment of $10,000 on or before December 31, 1910. The sums so tendered in the early part of the year 1911 were left at a bank for the plaintiff, who in March of that year withdrew that money. No payment was made in May, 1911, for the next month, but on June 1st of that year the sum of $50 was tendered to the plaintiff, who refused to accept it. The complaint alleges most of the facts, in substance, as heretofore set forth, and avers that in consequence of the failure to pay the installment for June, 1911, during the preceding month, all rights of the defendants in or to the real property thereby became forfeited.

The material averments of new matter in the answer are to the effect that the defendants were able, ready and willing to pay in advance the sum of $50, for the option during June, 1911, but on May 25th of that year the plaintiff requested them to alter the terms of the contract so as to advance to him $600 on account of the sums thereafter monthly maturing, unless the privileges granted were sooner exercised, when the unearned part of the option so paid beforehand was to be credited on the purchase price; that the defendants were thereby induced to believe, and did believe, that

the time for making such payment was extended until June 1, 1911, on which day, having secured the $600, they offered it to the plaintiff, who declined the advance, whereupon they tendered as the installment for that month, $50, which sum he also refused to accept; that by rejecting the installments when tendered for the month of January, February and March, 1911, and thereafter withdrawing such money from the bank, the plaintiff thereby waived the clause of the contract making time the essence thereof, and he could not thereafter revive such provision without giving written notice of his intention in. this respect; that by reason· thereof, and in consequence of the plaintiff's bad faith, he is and ought to be estopped to assert that any default has occurred in the payment of the installment for June, 1911, and that the successive portion for that month and all other partial payments subsequently maturing were and will be left with the clerk of the court until the decree herein is rendered.

The reply having put in issue the allegations of new matter in the answer, the cause was tried, and from the evidence received findings of fact were made, and based thereon the court deduced the conclusions of law that the contract was in full force, and that the rights of the defendants therein remained intact. The suit was thereupon dismissed, and the plaintiff appeals.

. AFFIRMED.

For appellant there was a brief over the names of *Mr. Benjamin F. Mulkey* and *Mr. George W. Cherry,* with an oral argument by *Mr. Mulkey.*

For respondents there was a brief over the names of *Messrs. Neff & Mealey* and *Mr. A. E. Reames,* with an oral argument by *Mr. Porter J. Neff.*

MR. JUSTICE MOORE delivered the opinion of the court.

That the plaintiff sought to obtain $600 from the defendants, who secured that sum for him, there is no doubt. The only controversy is as to when that money was to have been paid. L. W. Zimmer, the husband of the defendant Mabel Zimmer, testified that the plaintiff, on Thursday, May 25, 1911, requested the witness to advance $600 on account of the option. "Q. What did you say to him with reference to that? A. I told him that I was expecting some money from the east, and that as soon as that arrived I would be glad to make the payment. Q. Of $600? A. Of $600. That he said he would like to have it by the following Saturday. I told him that I didn't know just how soon I would have it, but questioned whether it would be there by Saturday. He said then: 'Well, if I could have half Saturday and the other half next week it would help me out.' I told him when it come I would just as well pay it all at one time, and he said, substantially, that would be all right, to get it as soon as possible; next week would do." That on Thursday, June 1, 1911, the witness, having secured the money, offered $600 to the plaintiff, who declined it, saying that he had borrowed that sum, whereupon the witness tendered him $50 on account of the option, which sum he also refused. In referring to the plaintiff and the $600 which he desired, Zimmer was asked on redirect examination: "What did he finally say with reference to getting that money next week?" The witness answered: "Well, he finally agreed that next week would do, and then he asked me about it Monday and again Tuesday; whether I had gotten the money." This testimony is corroborated by that of G. E. Maxwell, the father in law of the defendant Schutt, who was present and heard the conversation between Zimmer and the plaintiff in reference to the $600 which the latter desired to secure.

The plaintiff testified: That on Friday, May 26, 1911, wishing to obtain $600 for M. G. Womack, who needed one half thereof on that day or the next and the remainder a few days later, he requested an advance of the money from Zimmer, who informed the witness that he could give no assurance of furnishing it by Monday following, Scott saying: ''So the conversation about the money ended right there.'' That on Saturday, May 27, 1911, the witness borrowed from a bank $600, and thereupon sent a check for $10 to Womack, to whom he also sent another check on the following Monday for $290, and soon thereafter checks for the remainder. The written orders on a bank were identified and received in evidence. Scott denies the sworn declarations, made by Zimmer, that the money would be accepted at any time after Saturday, May 27, 1911. The testimony given by the plaintiff is corroborated by that of J. W. Lindquist, who was present when the request to advance $600 was made, and who stated upon oath: ''I know that Mr. Scott asked for that money; that is all I do know. And I know this: That he made it plain that he had to have the money at a certain time, Saturday or Monday as I have stated. He was very emphatic, and said it would do him no good if he didn't get it just then.''

Based on the conflicting testimony the findings of fact made by the trial court are to the effect that Scott led the defendants to believe that if the $600 were paid within a week or 10 days from the time the application therefor was made, it would be satisfactory to the plaintiff, and that the defendants were able, willing and ready to pay in advance the installment and request of the plaintiff to advance the sum so desired, and were led to believe that it would not be necessary to tender the June installment on or before May 31, 1911.

1. These findings practically determine that the testimony given by Scott and Lindquist in respect to when

the $600 could be paid is not equal to that produced by the defendants' witnesses. Though an equity case is tried anew on appeal, which review when a question of fact is involved, requires an examination of all the evidence that has been brought up, independent of any findings thereon that have been made, such decision of the trial court, as a result of the investigation of testimony when it is as conflicting as in the case at bar, is entitled to much weight, since that court had the advantage of seeing the witnesses, hearing them testify, and observing their expressions and demeanor when on the stand, which attention to the details of a trial are circumstances for the ascertainment of truth not possessed by an appellate court from a mere inspection of the transcript of the testimony. In view of the seemingly balanced disagreement in the testimony, it must be taken as true that it preponderates in favor of the defendants, as found by the trial court, and, such being the case, the remaining question is whether or not the plaintiff's representations and conduct were such as to estop him from asserting a forfeiture of the contract by reason of the defendants' failure to pay the installment for June, 1911, during the preceding month.

2. The doctrine of estoppel *in pais* applies only to representations with respect to past or present transactions, and not to promises as to the future, which assurances, if valid at all, must be binding as contracts: 16 Cyc. 752. "The only case in which a representation as to the future," says a text-writer, "can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right; and is made to influence others who have been induced to act by it": 11 Am. & Eng. Ency. of Law (2 ed.), 425.

3, 4. Where a party to a contract which is in force causes or prevents another party thereto from strictly performing the terms of the agreement, the former will not be permitted to avail himself of the default which

he has thereby occasioned: *Neppach* v. *Oregon & C. R. R. Co.,* 46 Or. 374 (7 Ann. Cas. 1035, 80 Pac. 482); *Missouri, K. & T. Ry. Co.* v. *Pratt,* 64 Kan. 118 (67 Pac. 464); *Slotboom* v. *Simpson L. Co., post,* p. 516 (135 Pac. 889). Analogous to this legal principle the rule is quite general that where time for the sale of real property has been postponed by a parol agreement, and such extension has been relied upon by the vendee, the statute of frauds cannot be invoked to perpetrate a fraud.

5. Thus where a party to a written contract orally agrees to extend the time for its performance, and puts the other party off his guard, he is estopped from taking advantage of the noncompliance with the terms of the writing, and the other party will have the extended time in which to discharge the modified agreement: *Longfellow* v. *Moore,* 102 Ill. 289; *Scheerschmidt* v. *Smith,* 74 Minn. 224 (77 N. W. 34); *Thompson* v. *Poor,* 147 N. Y. 402 (42 N. E. 13); and *Whiting* v. *Doughton,* 31 Wash. 327 (71 Pac. 1026).

6. "The time for performance of a written contract," says an author, "may be extended or enlarged by parol, but a sufficient consideration of each parol contract must be shown, or the courts will not enforce it": Beach, Mod. Law Cont., § 781.

No new consideration is necessary, however, when mutual acts are to be performed by the parties: *Izard* v. *Kimmel,* 26 Neb. 51 (41 N. W. 1068).

7. Evidence is admissible to show that the time of performance of a written contract, within the statute of frauds, has been enlarged by a subsequent oral agreement: *Stearns* v. *Hall,* 9 Cush. (Mass.) 31.

8. By accepting in March, 1911, the money for the option for preceding months, the plaintiff thereby reasonably created the impression that time was not of the essence of the agreement; and, not having given

the defendants a written notice of any alteration of his supposed intention prior to June 1, 1911, he ought not to be permitted to insist upon a forfeiture of the contract: *Graham* v. *Merchant,* 43 Or. 294 (72 Pac. 1088); *Miles* v. *Hemenway,* 59 Or. 318 (111 Pac. 696, 117 Pac. 273).

9. In the case at bar the plaintiff's representations having induced the defendants to believe that the installment for June, 1911, could be paid during the first week of that month, by advancing $600, for a year's option, their promise to pay that sum was a sufficient consideration for the extension of time, thereby estopping the plaintiff from asserting a forfeiture of the contract.

The decree should be affirmed; and it is so ordered.

AFFIRMED.