Argued February 14; affirmed March 27; rehearing denied
April 23, 1946

## CALLAGHAN *v.* SCANDLING ET AL.

(167 P. (2d) 119)

Before BELT, Chief Justice, and ROSSMAN, BAILEY, LUSK, BRAND and HAY, Associate Justices.

*W. C. Winslow,* of Salem, for appellant.

*Custer E. Ross,* of Salem (Ross & Lewelling, of Salem, on the brief), for respondents.

BAILEY, J. This suit was brought by J. H. Callaghan against Helen Laidlaw Scandling, trustee, hereinafter referred to as the defendant, and others for an accounting. The other defendants' demurrer to the complaint was sustained, and upon the plaintiff's refusal to plead further the suit was dismissed as to them. After a trial on the merits between plaintiff and defendant, a decree was entered in which it was provided "that plaintiff do have and recover of and from Helen Laidlaw Scandling, Trustee, property, at the rate of $160.00 per section, in the platted portion of Belcrest Memorial Park to the value of $1,280.00, comprising eight sections and three lots of said property and that the sum of $2.73 be paid by said defendant in cash". From that decree plaintiff has appealed.

On July 14, 1928, W. A. Laidlaw and J. H. Laidlaw, owners, as "trustees in joint tenancy," of a tract of land south of Salem, Oregon, known as Belcrest Memorial Park, entered into a contract with the plaintiff, referred to therein as the broker, by which the plaintiff was given the right to sell, at a price fixed by the owners, certain cemetery lots in Belcrest Memorial Park. That contract further provided:

"II. The owners agree to pay to the broker eighteen per cent of the total amount of all sales consummated by the broker or his salesmen or agents. Fifteen per cent of this amount shall be paid within seven days of the date of each sale, and the balance at such time as the purchaser shall have paid in thirty-five per cent of the entire amount of the sale. This commission shall be payable to the broker or his order.

"III. The owners agree to pay to the broker or his nominee or nominees one section of property (10′ x 18′) in Belcrest Memorial Park for each ten thousand dollars worth of completed sales consummated by him, his salesmen, or agents. This property to be paid when money paid in on said sales shall complete a certain trust agreement entered into between said owners, the First National Bank in Salem, and Belcrest Memorial Association, and dated the 30th day of June, 1928."

Shortly after the execution of this contract, paragraph III thereof was modified, according to the allegations of the amended complaint and admitted by defendant, "by agreement of the parties, increasing the bonus that should be paid to plaintiff or his nominees, from one section of property (10 feet by 18 feet) in Belcrest Memorial Park for each $10,000 worth of completed sales, to five per cent of the amount of the completed sales, to be paid for in property of the Belcrest Memorial Park at wholesale price."

Both W. A. Laidlaw and J. H. Laidlaw died prior to the filing of the amended complaint and the defendant succeeded to all their rights, title and interest, as trustees, in and to the tract of land hereinbefore mentioned.

There is no controversy in this case concerning the cash commissions provided for in the second paragraph of the contract. The language used in that paragraph, however, does aid in the construction to be placed on the next paragraph, the provisions of which are relied upon by the plaintiff for the recovery of additional compensation.

Two questions are presented for decision, towit: (1) Was it necessary that the entire purchase price of a parcel of land be paid before plaintiff would be entitled

to a bonus on the sale, and, (2) was the amount which the owners were required to pay, under the third paragraph of the contract as modified, in any way affected by the number of salesmen participating in the consummation of a sale?

The solution of the first question depends to a large extent upon what the parties to the contract intended by the use of the phrase "completed sales". Plaintiff contends "that a completed sale meant a sale where 30 per cent of the purchase price had been paid and a written contract entered into and accepted by the trustee, First National Bank." On the other hand, the defendant argues that there was not a completed sale within the meaning of the contract until the full purchase price had been paid.

It was decided by the circuit court that the term "completed sales", as used in the third paragraph of the contract, "means, and was intended by the parties hereto to mean, a sale or a contract of sale, where the purchase price therein specified had been fully paid by the purchaser; that plaintiff, by and through his salesmen and agents, made and consummated completed sales of property in Belcrest Memorial Park to the amount and value of $274,337.71, and that plaintiff's gross bonus on said completed sales amounted to $13,716.89 and that there has been paid by said defendant Helen Laidlaw Scandling, Trustee, and by her predecessors in trust, $12,434.16 by conveyances of property to, and on the order of, plaintiff * * *."

The contract here under consideration provided that the plaintiff would receive a cash commission of 18%, later changed to 19%, on all "sales consummated" by him or his salesmen, 15% to be paid "within seven

days of the date of each sale", and the balance when the purchaser had paid 35% of the purchase price.

The compensation stipulated in the third paragraph, referred to by the litigants as a bonus, is in addition to the cash commission specified in the preceding paragraph. In setting forth the conditions under which the bonus was to be given, the contracting parties did not provide that it would be paid within a specified time after the date of the sale, or after a designated percentage of the purchase price had been paid, as was done in reference to the cash commission. Plaintiff was entitled to a cash commission on all "sales consummated" by him, but he was entitled to a bonus only on "completed sales consummated" by him.

Plaintiff testified that all the bonuses which had been paid were received by his salesmen, and that no bonus was given on any sale until the full purchase price had been paid. One of the exhibits is a receipt signed by R. W. Mathis, a salesman, dated September 2, 1932, in which he acknowledges receiving from W. A. Laidlaw, J. H. Laidlaw, J. H. Callaghan, Maywood Investment Company, First National Bank in Salem, Trustee, and Belcrest Memorial Association, conveyances of certain described real property. Then follows this statement:

"It is claimed by the said W. A. Laidlaw, J. H. Laidlaw, J. H. Callaghan and Maywood Investment Company, a corporation, that said property represents the full amount that is unpaid from said persons, and any and all of them, to the undersigned because of commissions, salary, bonus and otherwise except as follows: (Here follows a list of sales with the dates, numbers, buyers' names, and the amount of each contract.)

454

"As to said incompleted sales last above listed it is claimed by the above named W. A. Laidlaw, J. H. Laidlaw, J. H. Callaghan, Maywood Investment Company, First National Bank in Salem, Trustee, and Belcrest Memorial Association, bonus shall become due and payable on each of the items above listed at the rate of five per cent of the entire amount of each thereof only when each contract is paid in full in cash, and which bonus shall be paid in property as specified in 'Bulletin to Salesmen No. 1' and provisions in lieu thereof.

\* \* \* \* \*''

All the salesmen employed by plaintiff were required by him to sign a similar receipt before receiving their bonuses. At the time plaintiff was procuring these receipts from the salesmen, he was contending, according to the recitals therein, that a bonus was not "due and payable" until the full purchase price had been paid. This seems to be the view held at that time by all the interested parties, with the possible exception of plaintiff's salesmen.

■ In our opinion the parties to the contract used the phrase "completed sales", in the clause referring to bonuses, to mean, as found by the circuit court, "a sale, or a contract of sale, where the purchase price therein specified had been fully paid by the purchaser". This is the practical construction which was placed thereon by the parties to the contract and gives effect to the difference in the language used in the two paragraphs of the contract here under discussion. We concur in the circuit court's finding relating "to the amount and value of" completed sales and bonuses paid.

The third paragraph of the contract between the owners of Belcrest Memorial Park and Callaghan originally provided that the owners were to pay to

Callaghan, or to his nominee or nominees, one section of property (10 feet by 18 feet) in Belcrest Memorial Park for each $10,000 worth of completed sales consummated by plaintiff and his salesmen. As already pointed out, this contract was modified so as to provide that, instead of one section of property being given for each $10,000 worth of completed sales, five per cent of the purchase price of completed sales was to be paid as a bonus by conveyance of property in Belcrest Memorial Park at wholesale price. Two conditions were attached to the payment of this bonus. It was not payable until, (1), the full purchase price of a tract of land had been paid, and (2), the completion of the trust agreement with the First National Bank in Salem. This trust agreement was completed some time in August, 1932, through the conveyance by the owners to the bank of sufficient property in the Park to make up the difference between the amount which had been received by the bank on sale of property and $263,000, the amount required to complete the trust.

The evidence is not clear as to the amount of cash that the bank had received from the sale of property at the time this conveyance of land was made to it by the owners of the Park. Mr. Callaghan testified that he thought the amount of money which had been received by the bank was somewhere between $225,000 and $230,000, but he also first stated that the amount required to complete the trust was $276,000. Defendant's attorney, in answer to a question propounded to him by the attorney for plaintiff, stated that he thought that the difference between the amount of the trust and the cash which had been received by the bank was somewhere around $16,000.

After the completion of the trust in August, 1932, the plaintiff designated the salesmen and saleswomen who were to receive bonuses and the amount which was to be paid in property to each of them. Eight individuals were named by him, and on September 2, 1932, property of the value of $12,106.67 was conveyed to them.

Plaintiff testified that the agreement which he had with his salesmen was that they must remain with him until the completion of the trust agreement with the bank in order to be entitled to a bonus, and that the only ones who did remain were the eight who received bonuses on September 2. He further testified that all salesmen who remained were to receive a bonus of five per cent of the purchase price on each completed sale in which they participated, regardless of how many assisted in its consummation.

■ There was no agreement between the owners of the tract of land and Callaghan's salesmen concerning the payment to them of any cash commission or bonus. The cash commission, according to the contract, was to be paid to Callaghan and the bonuses were to ·be paid to him or his nominee or nominees. In his complaint plaintiff alleged that a bonus of five per cent on the purchase price of completed sales was to be paid to him by a conveyance of land. On the trial of the case he contended, and now contends, that the contract between him and the owners was modified, in addition to the modification alleged in the complaint, by providing that if more than one salesman participated in a sale, each such salesman was to receive a bonus of five per cent. Such modification, if made, was not in writing and was therefore void. § 2-909, subd. 8, O. C. L. A.; *Taggart v. Hunter,* 78 Or. 139, 150 P. 738, 152 P. 871,

Ann. Cas. 1918A, 128. We, however, can not find any evidence of such a modification in the record except the uncorroborated testimony of plaintiff.

The data concerning each sale was recorded on a separate card, five inches by eight inches in size. From these cards, the attorney for plaintiff has segregated 300, and states that a bonus has been paid on each of the sales thereon described. He asserts that no bonuses have been paid on 156 completed sales shown in another segregation of cards which he has made. The record fails to disclose, as far as we have been able to ascertain, the particular sales on which bonuses have been paid, and we see no basis for these segregations. Upon the completion of the trust in August, 1932, there became payable many thousands of dollars in bonuses on completed contracts consummated both by salesmen who remained and others who did not remain until the completion of the trust.

We find no error in the decree appealed from, and it is therefore affirmed.