Argued July 1, affirmed September 10, 1964

# DOWLING ET UX v. ALBANY PLANING MILL, INC.

### 395 P. 2d 143

*John S. Horton,* Albany, argued the cause for appellant. On the brief were Weatherford, Thompson & Horton, Albany.

*Richard Kropp,* Albany, argued the cause for respondent. On the brief were Willis, Kyle & Emmons, Albany.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and LUSK, Justices.

PERRY, J.

The plaintiffs brought this suit for an accounting and for such relief as in equity appears just and proper in the circumstances. The facts are as follows:

The plaintiff C. B. Dowling was engaged in the construction of homes in the city of Albany and purchased lumber and building supplies from the defendant. In 1955, plaintiffs had become indebted to the defendant for lumber and building supplies, and had also created considerable indebtedness to other suppliers. On the 27th day of January, 1956, the plaintiffs and defendant entered into the following agreement:

"THIS AGREEMENT made this 27 day of January, 1956, by and between C. B. Dowling and Elizabeth S. Dowling, hereinafter called 'parties of the first part', and Allen Edwards, Jeanne Coffee and Allen Carl Edwards, Jr., doing business as the Albany Planing Mill, a partnership, hereinafter called 'parties of the second part.'

WITNESSETH

"Whereas, parties of the first part have been and are now engaged in the construction of dwell-

ing houses and are indebted to parties of the second part for building materials purchased from June 3, 1954 to July 1, 1955 in the total amount of $12390.84; and

"Whereas, parties of the first part are unable, at the present time, to pay said debt and are now desirous of making arrangements to give second parties security for said debt and for the payment thereof; and

"Whereas, parties of the first part are owners of a dwelling house located at 3205 South Geary Street, Albany, Oregon, more fully described in that certain mortgage recorded in Linn County Mortgage Records in Book 183 at page 347, and are also the owners of a building located at 2915 South Geary Street, Albany, Oregon, now being used as a grocery store, more fully described in that certain mortgage recorded in Linn County Mortgage Records in Book 182 at page 43; and

"Whereas, parties of the first part have attempted to refinance the above described premises for the purpose of raising money to liquidate the above debt but have not succeeded in said refinancing to date; and

"Whereas, parties of the second part desire security for said indebtedness and are also willing to attempt to refinance said premises in their name and to apply monies raised thereby upon said indebtedness.

"NOW THEREFORE, for and in consideration of the foregoing premises and of the covenants and agreements of the parties as hereinafter set forth, the covenants and agreements of each party being for and in consideration of the covenants and agreements of the other party, it is covenanted and agreed as follows:

"1. First parties hereby agree to forthwith convey the above described properties to second parties, and second parties agree to accept said properties and assume the existing mortgages thereon.

"2. Second parties hereby agree to secure, if possible, a mortgage upon each of the above described premises. In the event that second parties do secure mortgages upon said premises all monies received by second parties, over and above the existing mortgages upon said properties and their expenses of attaining new mortgages, will be credited to the account of first parties. In the event that second parties are able to obtain new mortgages upon said premises in an amount which would exceed the indebtness [sic] of first parties to second parties, then in that event second parties will refund to first parties said excess amount. Second parties hereby agree that after new mortgages have been secured upon the above described property that they will forthwith convey said property to parties of the first part for the sole consideration of the assumption of the mortgage indebtness [sic] against said properties by parties of the first part.

"In the event that parties of the first part can secure new mortgages upon said premises in their own names after the same have been conveyed parties of the second part, it is agreed that second parties will re-convey said premises to parties of the first part for the purpose of securing said mortgages. All monies received pursuant to said mortgages will be paid by parties of the first part to parties of the second part on the above indebtness [sic].

"4. It is understood and agreed that each of the above described properties are now incumbered by a mortgage. It is mutually agreed that until such time as a new mortgage is secured upon said properties that parties of the second part will rent said properties to parties of the first part for a sum that will equal the monthly payments due upon said existing mortgages.

"5. It is the purpose of this agreement, and the intent of the parties hereto, to provide security for the debt owed by the first parties to second parties,

and further, to allow second parties to attempt to refinance the above premises in order to raise money to pay said indebtness [sic] owed by first parties. It is mutually understood that second parties do not desire to make a profit from the property conveyed to them and that all monies received by them, after deducting their expenses, shall be applied to the debt owed by first party.

"6. It is understood that if said indebtness [sic] is paid by first parties by means other than new mortgages upon the above property that second parties will forthwith convey said property to first parties.

"7. It is mutually understood and agreed that in the event that said properties are not refinanced on or before January 15, 1958 that second parties will have the right, after said date, to sell the same; provided, however, the dwelling house shall not be sold for less than $16,000.00 and the store shall not be sold for less than $14,000.00. All monies received, from said sale, over and above the expense of said sale, will be first applied against said indebtness [sic] and the balance, if any, paid to first parties."

Pursuant to the agreement, on July 21, 1956, plaintiffs by warranty deed conveyed to defendant the property described in the agreement. This property consisted of the residence then occupied by the plaintiffs as their homestead, and a building leased for use as a grocery store. There was a mortgage upon each piece of property which the defendant assumed and agreed to pay as part of the consideration for the conveyances.

Subsequently, the defendant on December 1, 1957, refinanced the residence property and applied to the defendant's indebtedness the sum of $6,463.23. Thereafter, the defendant on February 15, 1961, sold the

store building and credited to the plaintiff's account the sum of $6,935.02.

The trial court found that the plaintiffs were indebted to the defendant for the sum of $3,785.02, less interest charged, upon the original debt, and for expenditures of $2,505.11 for taxes and mortgage payments made by the defendant. The trial court then found that, since the defendant should not recover interest upon the account from the date prior to and subsequent to the agreement, the amount due and owing from plaintiffs to defendant was the sum of $2,313.18, and thereupon entered a decree directing that the defendant recover from the plaintiffs the sum of $2,313.18. The trial court further decreed that defendant reconvey the residence property to the plaintiffs subject to the mortgage thereon.

The defendant has appealed, contending that the trial court was in error in failing to allow interest upon the debtors' account from the 27th day of January, 1956.

It is apparent from the decree, and from the position taken by the defendant, that the trial court treated this as a suit for an accounting and to redeem the residential property upon which a mortgage still exists.

It clearly appears from the agreement entered into between the parties and from the circumstances then existing that the parties intended to and did enter into a written accord which in itself provided the means for the discharge or satisfaction of the debt. See Restatement, 2 Contracts 785, 789, §§ 417 and 418.

The contract provides that the debt shall be liquidated either by the refinancing or sale of the property, for nowhere is there an agreement that in the

event the mortgaging or sale of the property fails to satisfy the amount of the debt the plaintiffs will be liable for the balance, if any.

■■ The defendant contends that even so it is entitled to interest by reason of ORS 82.010 (1) (d), which provides:

> "Money due upon the settlement of matured accounts from the day the balance is ascertained."

This statute substitutes an implied contractual obligation to pay interest so that no express agreement of the parties upon reaching a settlement of matured accounts is ncessary to charge interest. For, in the absence of an agreement to pay interest, interest can be recovered only in those circumstances authorized by statute. *Holtz v. Olds,* 84 Or 567, 164 P 583, 164 P 1184.

In the matter before us, however, the parties substituted an express agreement, that the matured account should be liquidated from the mortgage or sale of the real property, for the implied contract provided by statute.

■ The plaintiffs complied with all of the conditions mandatory upon them for the payment of the amount agreed upon when they conveyed the real property to the defendant, and the defendant assented to look to the property alone for the liquidation of the debt when it accepted the deeds.

> "Acceptance by a creditor of any performance tendered by the debtor as satisfaction of a pre-existing contractual duty, or of a duty to make compensation, is not prevented from operating as satisfaction by the creditor's manifested refusal so to regard it." Restatement, 2 Contracts 791, § 420.

The debt of defendant as represented by the matured account was, therefore, satisfied by the new agreement of the parties, and there remained only the means or method of liquidation of the property to pay the amount agreed upon.

The express contract of the parties effected a change in the position of the parties as contemplated under ORS 82.010 (1) (d). This agreement does not fall within any of the provisions of ORS 82.010. Therefore, if the parties desired that interest should be paid, it was necessary that they should include such a provision in the express contract. See 1 Eng Ruling Cases 393.

The decree of the trial court is affirmed. Plaintiffs shall recover their costs and disbursements.