Argued October 8, 1965, affirmed as modified March 16, 1966

# UNITED FARM AGENCY *v.* McFARLAND
### 411 P. 2d 1017

*A. J. Morris,* Eugene, argued the cause for appellant. On the briefs were Bailey, Hoffman, Spencer & Morris, Eugene.

*Kendrick M. Mercer,* Eugene, argued the cause for respondent. On the brief were Johnson, Johnson & Harrang, Eugene.

Before McAllister, Chief Justice, and Sloan, Goodwin, Holman and Lusk, Justices.

GOODWIN, J.

This is an action to recover a real estate commission. In a trial before the court without a jury the court entered judgment for the defendant and plaintiff has appealed.

Under date of February 18, 1963, plaintiff, United Farm Agency, a corporation, duly licensed as a real estate broker, and defendant, Orval McFarland, entered into a listing agreement in writing. The defendant agreed to pay to the plaintiff as a commission ten per cent of the selling price if plaintiff procured a purchaser for defendant's ranch in Lane County,

Oregon. The price stipulated in the agreement was $57,000, with a down payment of $24,000. The balance was to be paid in annual installments of $3,500 each, with the unpaid balances to bear interest at the rate of six per cent per annum. The listing agreement provided that defendant would pay the commission when a purchaser should be procured through plaintiff "at the stated price and terms, or at any other price and terms acceptable to" the defendant.

Plaintiff procured purchasers who offered to pay for the property $55,000, of which $12,000 was to be paid down, the balance in annual installments of $4,000, and the unpaid balances to bear interest at the rate of six per cent per annum. Defendant accepted the offer, but only on the condition, to which the plaintiff assented, that the commission would be payable in annual installments of $800 commencing July 15, 1964.

After the sale was consummated, plaintiff commenced this action to recover the full amount of the commission: $5,500. Defendant in his answer alleged the oral modification of the listing agreement.

By way of reply plaintiff alleged that after the sale of the real property defendant stated that he would pay the commission in installments and thereafter plaintiff tendered to the defendant a note calling for payment of annual installments of $800 each, with interest, but that the defendant refused to pay interest and thereby repudiated the alleged agreement for payment of the commission in installments.

The defendant testified as follows regarding his conversation with the plaintiff's agent, Ottar Bakke, at the time Bakke brought to the defendant the proposal to purchase the property:

"A Well, he [plaintiff's agent] said those ladies wanted to buy the ranch real bad, and they only

had $12,000.00 to put down, and I said, 'I can't sell it under the circumstances for that.' And Bakke said, 'if you will sell it to them for that,' he says, 'I'll defer on my commission.' And I said, 'what do you mean, defer your commission?' He says, 'I will take 1400 a year, every year when you get your payments from the ranch until it's paid.' I says, 'I can't do that.' He says, 'how about 1200 a year?' I says, 'I can't do that.' He says, 'how about a thousand?' I says, 'No, I can't do that.' He says, 'what can you do?' I figured things out and I said, 'if those ladies that's buyin' it, they want to buy the ranch, if they will pay the payment of 3500 a year, if they'll give me all the 1963 calves, I'll give you $800.00 a year until it's paid.' Bakke says, 'Okay, I'll accept it.' "

Both Bakke and defendant testified that nothing was said about interest at this time.

The testimony of Bakke was to the effect that at the time referred to in defendant's testimony, May 26, 1963, he agreed to accept payment of his commission in installments, but nothing was said then as to the amount of the installments. On that day defendant signed an earnest-money agreement for the sale of the property on the terms above stated. The earnest-money agreement had previously been signed by the purchasers procured by Bakke.

On July 13, 1963, defendant entered into a formal contract of sale with the purchasers pursuant to the May 26 earnest-money agreement. According to Bakke, after the sale had been consummated defendant offered to pay the commission in annual installments of $800, and Bakke assented to this scheme on condition that defendant sign a promissory note carrying interest, to which condition the defendant refused to agree.

Defendant swore that he would never have accepted the terms of the sale if he had known that the broker expected to receive interest on his deferred commission payments. The broker, electing to stand on the statute of frauds, took the position that the whole sum was immediately due and payable, and that installment payments were not an acceptable alternative, with or without interest.

The court found in accordance with defendant's version of the transaction. While finding that on May 26, 1963, defendant became indebted to plaintiff in the sum of $5,500, the court also found that the defendant was not presently liable to pay the entire sum, and accordingly entered a judgment for the defendant for costs.

██ The principal question, properly raised on the trial and by the assignments of error, is whether the defendant is precluded by the statute of frauds from proving the oral agreement modifying the time and manner of payment of the commission. The contract with the broker was within the statute of frauds and was required to be in writing. ORS 41.580 (7). Unless an exception to the general rule applies, the contract could subsequently be modified only by an agreement also in writing. *Callaghan v. Scandling et al.,* 178 Or 449, 456, 167 P2d 119 (1946); *Craswell v. Biggs,* 160 Or 547, 566, 86 P2d 71 (1939); *Osburn v. DeForce et al.,* 122 Or 360, 368, 369, 257 P 685, 258 P 823 (1927); *Kingsley v. Kressly,* 60 Or 167, 173, 111 P 385, 118 P 678, Ann Cas 1913E 746 (1911); *Willman v. Alver,* 252 F2d 895 (9th Cir. 1958).

The defendant contends that the rule against oral modification does not apply where the modification relates only to the time of performance. This question was left open in *Neppach v. Or. & Cal. R. R. Co.,* 46

Or 374, 394-395, 80 P 482 (1905). In *Kingsley v. Kressly,* 60 Or at 173, it was said that such an oral modification was void, and in *Osburn v. DeForce,* 122 Or at 369, the *Kingsley* case was cited with approval upon this point, although the point was not involved. In *Scott v. Hubbard,* 67 Or 498, 506, 136 P 653 (1913), and *Osborne v. Eldriedge et al.,* 130 Or 385, 390, 280 P 497 (1929), neither of which cites the *Kingsley* case, there are dicta to the contrary. In *Sherman-Clay Co. v. Buffum & Pendleton,* 91 Or 352, 356, 179 P 241 (1919), *Scott v. Hubbard* is cited with approval, although, again, the point was not involved.

■■ It is unnecessary to decide now whether or under what circumstances an oral time-of-performance modification can be proved in the face of ORS 41.580 (7). The oral agreement in this case was, by its terms, not to be performed within a year from the making and therefore ran afoul of ORS 41.580 (1). A verbal agreement for the payment of money by annual installments for a fixed period of years is within the statute. 37 CJS 566, Frauds, Statute of, § 60 (1943); *Jackson Iron Co. v. Negaunee Concentrating Co.,* 65 F 298 (6th Cir. 1895); *Meyer v. E. G. Spink Co.,* 76 Ind App 318, 124 NE 757, 127 NE 455 (1921). Such an oral modification of the time of performance, being itself within the statute of frauds, is invalid. *Osburn v. DeForce,* supra, 122 Or at 370; 37 CJS 736, Frauds, Statute of, § 232 (1943). There can be no doubt but that the statute of frauds covers the oral agreement in this case.

■ The controlling question, therefore, is whether plaintiff is estopped to rely on the statute of frauds. Our decisions recognize the rule that if a modification of a written contract by parol has been acted on by the parties and the position of one of them has been

changed for the worse in reliance on the modification, the other party will be denied the right to set up the statute of frauds and stand on the original agreement. *Rogers v. Maloney,* 85 Or 61, 64, 165 P 357 (1917). See, also, *Osburn v. DeForce,* supra, 122 Or at 370. As stated by Mr. Justice ROBERT S. BEAN in *Neppach v. Or. & Cal. R. R. Co.,* supra, 46 Or at 397:

> "* * * The statute of frauds may not be invoked to perpetrate a fraud, nor will a party be permitted to insist upon the statute to protect him in the enjoyment of advantages procured from another, who, relying on an oral agreement, has acted and placed himself in a situation in which he must suffer wrong and injustice if the agreement is not enforced * * *."

The wrong or injury suffered by the defendant, according to his brief, is that "he was damaged in that he received only one-half of the down payment that he originally asked; and he did not receive the price originally asked; defendant's position is irrevocable in that he signed a contract with a third party in reliance upon the representation * * *."

The correctness of the trial court's disposition of this case turns upon the legal effect of the defendant's change of position. If his being induced to accept $12,000 down and a $55,000 total purchase price instead of the $24,000 down and $57,000 which he asked in his listing agreement was detrimental to the defendant, there would seem to be no doubt that an estoppel would lie.

On the issue of detriment, the defendant testified that he needed the larger down payment. He testified that if it were not for the promise of a deferred payment of the broker's commission "Well, I just wouldn't

have done it, because I didn't get my money out of it by taking the $12,000 down."

■■ The defendant testified further that if he paid $800 annually on the commission, the $4,000 annual payment to him by the purchasers would leave him $1,400 annually to apply on his equity and $1,800 annually to apply to the contract balance which he owed on the property. We are satisfied that the trial court had ample evidence upon which to find that the defendant gave up a substantial benefit when he agreed to take $12,000 down. The defendant would not have sold the ranch on the terms for which he sold it if it had not been for the broker's representations to him that he could pay the commission in annual installments. While these findings were not spelled out by the trial judge, they are necessarily included in his general finding for the defendant.

The importance the plaintiff now attaches to receiving the whole commission at once is at least consistent with the defendant's argument that cash is desirable. The defendant swore that he would never have sold his ranch for $12,000 down only to hand nearly half of that down payment immediately to the plaintiff. The defendant testified that he would have been happy, however, to pay the full commission in cash if the plaintiff had brought him a buyer who would pay the desired $24,000 cash down. This testimony was not contradicted. All the elements of an equitable estoppel are present. See *Rogers v. Maloney,* supra; Restatement, Contracts, § 90 (1932); 1-A Corbin, Contracts 192-194, § 194 (1963). The trial court properly deemed the plaintiff to be estopped from relying on the statute of frauds.

In addition to the elements of equitable estoppel that would have been present if this were a dispute

merely between parties dealing at arms' length, we have here the typical situation in which the plaintiff had been engaged by the defendant in a fiduciary capacity to serve the defendant's interests. When the plaintiff returned to the defendant with a different transaction than the one the defendant initially had agreed to accept, the plaintiff's interests in a commission came into conflict with the defendant's interests in obtaining cash for his equity. The defendant would not accept the offer until the plaintiff agreed to defer the commission. It would appear to be singularly inequitable in such a case to permit a fiduciary to rely upon the statute of frauds.

The next question is whether, in the absence of an agreement of the parties concerning interest, interest should run on the unpaid balance of the commission during the remainder of the time the debt for the commission is being retired.

The plaintiff contends that under ORS 82.010 interest accrues from the time the debt is liquidated and "owing." The statute provides, however, that interest shall be payable on "[a]ll moneys after they become due."

The trial court had the right to believe, and apparently did believe, that the true agreement of the parties bound the defendant to pay $800 each year until the full commission was paid. Accordingly, under that agreement, the debt would come due at the rate of $800 each year. Interest, therefore, would run on any $800 installment not so paid, but not upon the unpaid balance not yet due. The statute does not import into every contract that is silent on the matter of interest an implied agreement to pay interest. It imposes a duty to pay interest only in those cases in

which the law recognizes a duty to pay a certain sum at a certain time and such a payment has not been made. After a given payment is due, we may assume that interest will accrue on the amount due, but nothing in the statute requires the accrual of interest on sums not yet due. See *Dowling v. Albany Planing Mill*, 238 Or 425, 395 P2d 143 (1964).

■ The plaintiff also argues that in rejecting the tendered interest-bearing note, the defendant repudiated the oral agreement for the deferred payment of the commission and is no longer entitled to rely upon it. The simple answer to that contention is found in the evidence that the parties mutually agreed to a deferred payment of the commission, but that the defendant did not assent to an attempt unilaterally to add interest to the deferred payments. The substance of the agreement actually made by the parties was a question of fact, and the facts were resolved by the trial court for the defendant.

The judgment below should be modified to show that it is without prejudice to the plaintiff's right to receive the payments which the defendant agreed to make.

Affirmed as modified.

LUSK, J., dissenting.

Some of the courts and some of the legal writers do not like the statute of frauds. They think it has outlived its usefulness, if it ever had any. See, for example, Corbin, The Uniform Commercial Code—Sales; Should It be Enacted?, 59 Yale L. J. 821, 829; Fox, Equitable Estoppel and the Statute of Frauds in California, 53 Calif. L. Rev. 590, 591-593. See, contra, Llewellyn, What Price Contract?—An Essay

in Perspective, 40 Yale L. J. 704, 746-748. Whatever merits these strictures on the statute of frauds may have, it is nonetheless the valid expression of legislative policy in Oregon and it is the duty of the courts to enforce it and not, by the course of judicial decision, to subject it to a gradual process of erosion.

While it may be to the advantage of the defendant in this case to pay the broker's commission in annual installments of $800, rather than in cash, the mere loss of that privilege does not take the case out of the statute. So to hold would be to annul the statute: *Bennett v. Harrison,* 115 Minn 342, 348, 132 NW 309, 311, 37 LRA NS 521; *Crosby v. Strahan's Estate,* 78 Wyo 302, 314-316, 324 P2d 492; 3 Williston on Contracts (3d ed) 805-810, § 533A. As the court said in *Glass v. Hulbert,* 102 Mass 24, 35, 3 Am Rep 418 (quoted with approval in *Seymour v. Oelrichs,* 156 Cal 782, 794-795, 106 P 88, 134 Am St Rep 154):

> "The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its enforcement, after the other party has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds."

As elsewhere stated, the party asserting the estoppel must have been induced "to change his position, so

that he will be pecuniarily prejudiced": *Swain v. Seamens,* 76 US 254, 274, 19 L Ed 554; *Everley v. Equitable Surety Company,* 190 Ind 274, 280, 130 NE 227. The Oregon cases involving the question are decided in accordance with the foregoing principles: *Rogers v. Maloney,* 85 Or 61, 165 P 357; *Scott v. Hubbard,* 67 Or 498, 136 P 653; *Kingsley v. Kressly,* 60 Or 167, 111 P 385, 118 P 678, Ann Cas 1913E 746; *Neppach v. Or. & Cal. R.R. Co.,* 46 Or 374, 80 P 482. In all these cases it appeared that the party relying on the oral agreement would have suffered the forfeiture of rights under a written contract if the plea of the statute of frauds had been sustained. There would have been a real, not a fancied, injury; and in no case that I have seen, decided by this or any other court, has an estoppel been found unless the change of position of the party asserting it has been accompanied by substantial pecuniary loss.

In this case the listing agreement provided that the defendant would pay to the plaintiff as a commission 10 per cent of the selling price of defendant's ranch, together with the farming implements and livestock, when a purchaser should be provided through the plaintiff at the stated price and terms, or at any other price and terms acceptable to the defendant. The stated price and terms were $57,000 with a down payment of $24,000, and the balance payable in annual installments of $3,500 with interest at six per cent per annum. Defendant sold the property for $55,000, of which $12,000 was paid down, the balance to be paid in annual installments of $4,000, each, with interest at the rate of six per cent per annum. The contract also provided that defendant could keep the calves on the property.

The "change of position" asserted by the defend-

ant in his brief is that he sold his property for less than he "asked" and for a down payment less than he "asked." This is all that he can claim, though it should be added that he improved his position with respect to the annual payments, and he kept the calves. In my view, this is not the sort of unconscionable loss and injury which the law demands for the creation of an estoppel. It is not an uncommon thing for owners of real property to reduce the asking price in order to make a sale. The defendant had no contract for the sale of his ranch, the benefits of which he lost because of reliance on the oral agreement. There is no evidence that the property was worth more than the price for which he sold it. There is no evidence that he would ever have gotten a better price or a larger down payment, or that he suffered any loss or hardship, such, for example, as inability to meet his obligations, because of the reduction in the amount of the down payment. In these circumstances the defendant's testimony that he would not have accepted the offer but for the oral agreement becomes immaterial.

I would reverse the judgment.