Argued March 26, affirmed as modified April 23, 1973

# KOTAN, *Respondent, v.* SCHOOL DISTRICT
## No. 110C ET AL, *Appellants.*
### 509 P2d 452

*John S. Horton,* Albany, argued the cause for appellants. With him on the brief were Weatherford, Thompson, Horton & Jordan, P.C., Albany.

*James C. Goode,* Albany, argued the cause for respondent. With him on the brief were Goode, Goode, Decker & Hinson, Albany.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

This is a suit in which the defendant School District No. 110C, et al, appeals the trial court's decree which ordered the reformation of the employment contract between the district and plaintiff, Willette H. Kotan, and awarded plaintiff damages for defendants' breach thereof.

Defendants operate a four-classroom elementary school in Crabtree, Linn County, with an enrollment varying between 70 and 80 students. During the 1970-71 school year there were three teachers, one of whom also acted as the principal.

However, defendant board decided to increase the teaching staff for the 1971-72 school year in order to accommodate the anticipated growth from a local housing development. Aside from plaintiff, defendant board hired four teachers. The board thereupon increased the budget for principal and teachers from approximately $27,000 to approximately $45,000. The anticipated growth did not occur. The enrollment remained between 70 and 80 during the 1971-72 school year.

On April 1, 1971, the board first interviewed and immediately hired plaintiff. There is a conflict in the evidence regarding the extent to which plaintiff was hired to teach. However, defendants concede plaintiff was also hired as the school's principal.

On April 6, 1971, plaintiff signed a form "Teacher's Contract" which described her job as including only teaching duties.

During the summer plaintiff attended all board meetings and prepared as principal such things as a Title I ESEA funding application which was approved, calendar schedules, report card date schedules and the Crabtree school policy and policy checklist. Plaintiff also obtained a list of the teachers and corresponded with them during July in her capacity as principal.

On August 24 the board accepted the resignation of one of the teachers, Mrs. Wilson. J. W. Hanslovan, then the school board chairman, testified he told plaintiff later that Mrs. Wilson had told him her reason for resigning was an inability to work with plaintiff.

The only specific reasons given by Mrs. Wilson, according to Mr. Hanslovan, regarding her conflict with plaintiff were that apparently Mrs. Wilson disliked the desk arrangement and the reading list as established by the plaintiff. The defendant board was unaware of the extent of prior contact between Mrs. Wilson and plaintiff, which the only evidence showed was but one informal 15-minute conversation. Neither Mrs. Wilson nor any other school teacher was called by defendants to support the claim plaintiff would not or could not get along with them. None of the teachers testified at all.

The board then discussed with and plaintiff ob-

jected to the possibility of her assuming some of Mrs. Wilson's teaching duties. However, the housing development was not progressing as expected and so the board decided to "wait and see" on the school's actual enrollment before deciding who, if anyone, would replace Mrs. Wilson. It then determined to ask Mrs. Kotan to teach a regular class.

In preparation for the commencement of classes on September 7, 1971, plaintiff prepared orientation for the teachers, and on August 30 an introduction, orientation and workshop was held with Mrs. Kotan presiding. This lasted approximately four to five hours. Plaintiff next saw the teachers again on Friday, September 3, during a three-hour session discussing school policy matters.

That night, without any notice to plaintiff, a special board meeting was held at which the remaining teachers threatened to resign unless plaintiff was terminated. The board thereupon decided to request plaintiff's resignation because of her "inability to communicate and demonstrate leadership."

The following day another special meeting was held during which defendant board asked for plaintiff's resignation. Plaintiff was told only that there was a personality clash between her and the teachers and that they objected to her request for the filling of class schedules and individual biographical sketches. The plaintiff refused the request and stated she intended to be at school opening day on September 7. The board thereupon told her she would not have any further authority as principal or teacher. At no time did the board interview Mrs. Kotan or the teachers in the presence of each other.

Plaintiff appeared for work on September 7

and was instructed by Mr. Hanslovan to sit in the teacher's room, where she remained unoccupied the entire day. That evening there was another board meeting during which one of the teachers, Mr. Carr, was appointed full-time principal and instructed to give plaintiff a teaching assignment. There is conflicting evidence concerning plaintiff's failure to teach as requested by Mr. Carr. Then, on September 13, pursuant to legal advice, the board for the first time sent plaintiff written notice of her dismissal, this time stating the grounds to be "inefficiency, insubordination, neglect of duty, and inadequate performance." They held a hearing September 23, affirmed their decision to dismiss plaintiff and ordered she be paid $2,076.60 for work done.

Defendants first argue their demurrer should have been sustained because plaintiff's complaint did not sufficiently allege a prior oral agreement. The trial court overruled it.

Plaintiff's complaint alleged, inter alia:

"On or about April 6, 1971, defendants employed plaintiff as a principal of the Crabtree Elementary School with substitute and special reading teaching duties as needed. A true copy of the contract of employment is attached hereto, marked Exhibit 'A' and by this reference made a part hereof.

"By mutual mistake of the parties, the contract did not state that plaintiff was to serve as principal of the school. By further mutual mistake of the parties, the contract did not state that plaintiff would not be assigned regular classroom teaching duties except as a substitute during the absence or illness of the regular teachers and except special reading teaching assignments."

We agree with the trial court that the foregoing

sufficiently alleged there was an oral agreement prior to the execution of the written contract.

■ ■ The requisite elements for reformation of a contract are a prior agreement and a subsequent writing which by mutual mistake varies from the prior agreement. *Prueitt v. Sound Con. & Eng. Co.,* 178 Or 380, 391, 167 P2d 698 (1946). The writing being presumed to be correct, there must be "clear and convincing" evidence both of the prior agreement and in support of its reformation. *Ray v. Ricketts,* 235 Or 243, 250, 383 P2d 52 (1963); *Dolph v. Lennon's, Inc.,* 109 Or 336, 355, 220 P 161 (1923), and cases cited therein.

■ Defendants claim there was not clear evidence of a prior oral agreement. We do not agree. As stated above, defendants concede that plaintiff was hired both as a principal and as a head teacher and that the written contract mistakenly omitted this provision. Indeed the minutes of the school board so state. The written contract was therefore correctly reformed to include that plaintiff was to serve as principal of the school.

Defendants strongly contend plaintiff breached the contract because of "inefficiency, insubordination, neglect of duty, and inadequate performance" by refusing to teach her assigned class. We note plaintiff was not even assigned a class until after being replaced as principal by Mr. Carr.

■ The board actually first terminated plaintiff as principal because of her "inability to communicate and demonstrate leadership." Yet William F. Newell, a board member, testified in response to questions from the court that he believed the teachers did not have legal grounds to resign at that time. Neverthe-

less, the board first dismissed plaintiff without written notice or opportunity to face the teachers. Furthermore, no teacher was called at the trial to testify by the board. The trial court may well have considered this significant in the light of ORS 17.250 (6) and (7),[①] as do we, since the burden to establish that plaintiff had breached the contract in a manner to justify her dismissal was on defendants.

■ ■ In an annotation entitled *What Constitutes "Incompetency" or "Inefficiency" as a Ground for Dismissal or Demotion of Public School Teacher,* 4 ALR3d 1090, 1099 (1965), the text discusses the problem at length. Section 4 of the annotation deals with the performance of duties by supervisory personnel, and states:

> "As in the case of teachers, school principals may be subject to dismissal or other disciplinary action upon the contractual or statutory ground of incompetency or inefficiency. In the case of principals, such incompetency may manifest itself in the incompetent performance of formal administrative duties, or in the failure to maintain proper discipline among the students of the school, or in the failure to maintain a harmonious and effective

---

[①] ORS 17.250:

"The jury, subject to the control of the court, in the cases specified by statute, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions:

"* * * * *

"(6) That evidence is to be estimated, not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; and, therefore,

"(7) That if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."

relationship, free of unwarranted dissension, with the teaching personnel of the school."

We think the foregoing correctly states the general rule and the intendment of the legislature in enacting ORS 342.530 relating to the dismissal of teachers. Plaintiff, although employed as "principal and head teacher," is included within the meaning of that section for purposes relating to dismissal. ORS 342.340 (4); ORS 342.595 (1) (b).

Although, of course, we review this case de novo (ORS 19.125 (3); *Wood v. School District No. 13,* 107 Or 280, 214 P 589 (1923)), this is a type of case where the opportunity of the trial judge to see and hear the witnesses and thus to determine the credibility of each is of substantial significance. *Bogle v. Paulson,* 185 Or 211, 201 P2d 733 (1949); *Ruddy v. Ore. Auto. Credit Corp.,* 179 Or 688, 174 P2d 603 (1946).

Defendants particularly urge they were justified in terminating the contract on the ground that plaintiff was guilty of "insubordination" because after she had been removed as principal she not only rejected the board's offer for her to serve as a teacher but refused to accept a directive from Mr. Carr, who had already been appointed principal by the board in her stead, that she teach a specific class.

In *Prime v. Prime,* 172 Or 34, 61, 139 P2d 550 (1943), the court stated, adopting the language of the Restatement of Contracts:

" 'A breach or non-performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty.' Restatement of the Law of Contracts, § 397; and see §§ 274, 275."

See also: *Crocker v. Weil,* 227 Or 260, 284, 361 P2d 1014 (1961); 6 Corbin, Contracts 2, §§ 1252-54 (1962); *G.E.J. Corporation v. Uranium Aire, Inc.,* 311 F2d 749, 753-54 (9th Cir 1962); *In re New York, New Haven & Hartford Railroad Co.,* 298 F2d 761, 764 (2d Cir 1962); *In re Marshall's Garage,* 63 F2d 759, 762 (2d Cir 1933).

■ The essential question under the foregoing authorities is whether or not the provision of the contract employing plaintiff as principal and head teacher was sufficiently material as to justify the plaintiff in refusing under the contract to accept the position of a classroom teacher as designated by the new principal, Mr. Carr, appointed by the board to take plaintiff's position as principal. Not only did this require a reduction of pay under the contract, but, more important, it relegated her from the position of chief administrative officer of the school and the district[⊗] to one having no administrative responsibility outside of that involved in the conduct of the single classroom assigned to her.

Although the board contends it was under pressure of a mass teacher resignation only days before classes were to resume, that contention alone, on the basis of this record, was not sufficient grounds to terminate plaintiff as principal.

We agree with the trial court that such action by the board was a breach "so material as to justify a refusal of the other party to perform." *Prime v. Prime,* supra, 172 Or at 61.

■ Absent evidence of reasonable alternative work available to plaintiff during the contract period, the

---

[⊗] The district had no superintendent.

trial court correctly awarded the full amount of the agreed wages.[9] *Kulm v. Coast-to-Coast Stores,* 248 Or 436, 441, 432 P2d 1006 (1967); *Brenneman v. Auto-Teria, Inc.,* 260 Or 513, 491 P2d 992 (1971); Annotation, 17 ALR2d 968, 978 (1951).

■ Finally, defendants assert the trial court erred in its order that the six per cent legal interest rate should attach to the full amount decreed from September 30, 1971, until paid.

In *Cross of Malta Bldg. Corp. v. Straub,* 257 Or 376, 384, 476 P2d 921 (1970), 479 P2d 505 (1971), the Supreme Court said:

> "In an equity case a prayer of this nature is sufficient to embrace a claim for interest where, under all the circumstances of the case, it seems equitable to do so. *Emrich v. Emery,* 216 Or 88, 99, 332 P2d 1045, 335 P2d 604, 337 P2d 972 (1959)."

Since plaintiff was to be paid under the contract in 12 monthly installments, defendants contend the interest on the unpaid installments should be computed separately from the time each became due, citing *United Farm Agency v. McFarland,* 243 Or 124, 133, 411 P2d 1017 (1966).

The applicable statute is ORS 82.010 (1) (a), which provides:

> "(1) The legal rate of interest is six percent per annum and is payable on:
>
> "(a) All moneys after they become due; but open accounts bear interest from the date of the last item thereof."

[9] Defendants in their assignments of error do not contend that the claimed job offer made by the new principal to plaintiff that she teach a particular class should be considered as in mitigation of damages. We therefore do not consider that question.

The question here presented is whether for purposes of ORS 82.010 (1) (a) money is "due" at the accrual of the cause of action for breach of the employment contract or at the time each salary installment was "due" under the contract.

In *United Farm Agency* the court said:

"The trial court had the right to believe, and apparently did believe, that the true agreement of the parties bound the defendant to pay $800 each year until the full commission was paid. Accordingly, under that agreement, the debt would come due at the rate of $800 each year. Interest, therefore, would run on any $800 installment not so paid, but not upon the unpaid balance not yet due. The statute does not import into every contract that is silent on the matter of interest an implied agreement to pay interest. It imposes a duty to pay interest only in those cases in which the law recognizes a duty to pay a certain sum at a certain time and such a payment has not been made. After a given payment is due, we may assume that interest will accrue on the amount due, but nothing in the statute requires the accrual of interest on sums not yet due. See *Dowling v. Albany Planing Mill,* 238 Or 425, 395 P2d 143 (1964)." 243 Or at 133-34.

1 Restatement 548-49, Contracts § 338, states:

"The rules for determining the damages recoverable for an anticipatory breach are the same as in the case of a breach at the time fixed for performance.

Comment:

"a. The fact that an anticipatory repudiation is a breach of contract (see § 318) does not cause the repudiated promise to be treated as if it were a promise to render performance at the date of the repudiation. Repudiation does not accelerate the time fixed for performance; nor does it change

the damages to be awarded as the equivalent of the promised performance. * * *"

Corbin states in his treatise on contracts that:

"* * * The rule can now be laid down, in spite of some inconsistent decisions, that the measure of damages is the same whether the defendant's breach is totally anticipatory, partly anticipatory, or in no respect anticipatory. In the last kind of case, the value of the promised performance is ordinarily to be determined as of the time when and the place where that performance was to be rendered. This is equally true in cases where the breach is anticipatory or partly anticipatory. The other existing rules for the determination of value are likewise applicable.

"A promise is not treated as a promise to perform at the date of repudiation merely because a repudiation that takes place before the time agreed upon for performance is treated as a present breach of contract. This is true whether the repudiation is wholly anticipatory or only partly so. * * *" 5 Corbin, Contracts 310-13, § 1053 (1964).

*See also: Daum v. Yuba Plaza, Inc.,* 11 Cal App 3d 65, 76-77, 89 Cal Rptr 458 (1970).

■ We agree and therefore hold the interest should be computed from the time each salary installment became due under the contract until paid. We believe this analysis is in accord with the general principle of awarding damages so as to place the person damaged in the position he would have been had the contract been performed.

Accordingly, the decree is modified with direction to the trial court to recompute the interest in accordance with this opinion.

Affirmed as modified.